**JOURNAL PUB. CO.**
v.
**GENERAL CAS. CO.**
No. 13427.

United States Court of Appeals
Ninth Circuit.

Jan. 15, 1954.

Rehearing Denied Feb. 11, 1954.

---

Robert A. Leedy, Barzee, Leedy & Keane, Portland, Or., for appellant.

Robert T. Mautz, Wilbur, Mautz, Souther & Spaulding, Portland, Or., for appellee.

Before HEALY and POPE, Circuit Judges, and LEMMON, District Judge.

POPE, Circuit Judge.

The appellant brought an action against the appellee in the Circuit Court of the State of Oregon to recover damages on account of the failure of the appellee, here called General, to reimburse appellant, here called Journal, for its cost of defense and settlement of a certain action for personal injuries brought against Journal by one Perton who sustained injuries as a result of an automobile collision for which an employee of Journal was alleged to have been responsible. Prior to the date of Perton's injuries, General had issued to Journal two policies of liability insurance. General disclaimed any responsibility under its policies to defend or settle the Perton suit. Journal's action for reimbursement was removed to the court below where General had judgment.

The case was tried upon an agreed statement of facts contained in a pretrial order and upon evidence received on behalf of the plaintiff. From the agreed statement it appears that General had issued to Journal a liability policy here referred to as the "blanket" policy, whereby General agreed to pay all sums which Journal should be obligated to pay by reason of liability imposed by law for damages because of bodily injuries sustained or alleged to have been sustained by any person or persons, and to defend on behalf of Journal any suit against it alleging such bodily injury. The blanket policy however provided that it should not apply to bodily injuries "sustained by any person while engaged in the employment * * of the insured." The other liability policy, here referred to as the "employers'" policy, insures Journal against liability imposed by law in excess of the sum of $5000 for injuries "sustained by any employee or employees of the insured."

Perton's complaint alleged that on the 23d day of March, 1946, Journal "employed plaintiff as one of its carriers of its papers", and that thereafter and on March 30, 1946, in order to familiarize Perton with his route, the defendant Journal directed its district manager to drive Perton along the route and inform him of his duties in connection with his said employment. The parties in their agreed statement construed this to be an allegation that at the time of Perton's injuries he was an employee of Journal. When service in the Perton action was made upon Journal, it forwarded the complaint and summons to General and requested that it undertake the defense of the action. General thereupon undertook the defense and engaged an attorney for that purpose who prepared, verified and filed an answer to the complaint on behalf of Journal. The answer ad-

mitted "that on March 23, 1946, this defendant employed plaintiff to carry its papers over a route including Aurora, Oregon", and that the district manager on March 30, 1946, the day of the accident, conveyed Perton along that route; and it denied that Perton was employed to carry newspapers in the particular area where the accident occurred. This answer was filed on June 12, 1947. On June 30, 1947, General wrote to Journal stating: "The complaint alleges and is brought upon the theory that the plaintiff was an employee at the time the accident occurred. The [blanket] policy with you does not provide for injuries to an employee. The coverage for actions by an employee is by virtue of our policy No. [describing the employers' policy]. Under endorsement No. 1 of that policy the Company is only liable for any sum in excess of $5000. * * * We are therefore tendering the defense of the above entitled action to you." Journal immediately protested that as a matter of fact Perton was not an employee; that his work of distributing newspapers was that of an independent contractor; that in any event at the time of the accident neither Perton nor the driver were on duty, but because General persisted in its position that it was not under any obligation to defend, Journal undertook the defense of the action. The case was ultimately compromised and settled by the payment of $3000, $2000 of which was contributed by Journal and $1000 by General under an agreement between them that such contributions were made without prejudice to the rights or claims of the parties under such policies.

The first specification of error relates to the court's refusal to remand the case to the State court. The facts relating to the removal are these: Journal is an Oregon corporation and General a corporation of the State of Washington. The original complaint was for the recovery of $2000 (the amount contributed to the settlement by Journal), and the further sum of $330, alleged to have been Journal's cost of defense and settlement of the action. Under Oregon statutes and decisions [1] the plaintiff in such a suit is entitled to recover reasonable attorney's fees provided settlement is not made within six months from the date proof of loss is filed or from the day of commencement of the action where proof of loss is not required. The Oregon rule is that in a case of this kind where such proof of loss is not required, plaintiff may file a supplemental complaint after the six months period has expired and thereby allege the accrual of the right to attorney's fees. Walker v. Fireman's Fund Ins. Co., 114 Or. 545, 234 P. 542. Here, after the six months had expired, plaintiff filed a so-called amended complaint adding to the amounts for which it sought recovery the sum of $750 alleged to be reasonable attorney's fees. Upon the theory that thus the amount in controversy had been increased above the jurisdictional minimum, the cause was removed to the court below. Motion to remand was denied.

Appellant asserts that since the action at the time it was commenced was not one which could have been instituted in or removed to the federal court because the right to attorneys' fees had not then accrued, the defendant had no right of removal at the time the so-called amended complaint was filed. As stated in Great Northern Ry. Co. v. Alexander, 246 U.S. 276, 280, 38 S.Ct. 237, 239, 62 L.Ed. 713: " * * * that a case not removable when commenced may afterwards become removable is settled by Ayers v. Watson, 113 U.S. 594, 5 S.Ct. 641, 28 L.Ed. 1093; Martin's Administrator v. Baltimore & Ohio R. Co., 151 U.S. 673, 688, 691, 14 S.Ct. 533, 38 L.Ed. 311; Powers v. Chesapeake & Ohio Ry. Co., 169 U.S. 92, 18 S.Ct. 264, 42 L.Ed. 673, and Fritzlen v. Boatmen's Bank, 212 U.S. 364, 29 S.Ct. 366, 53 L.Ed. 551." We think that the principles invoked to sustain the second petition

1. § 101–134, O.C.L.A., and State v. Claypool, 145 Or. 615, 28 P.2d 882.

for removal in Powers v. Chesapeake, etc., supra, require us to hold that the trial court properly denied the motion to remand. Cf. Sink v. Mutual Life Insurance Co. of New York, D.C., 56 F. Supp. 306, and Fleetwood v. Milwaukee Mechanics Ins. Co., D.C., 87 F.Supp. 353.

■ It is contended by appellant that apart from all other considerations General is estopped to deny its obligation to defend the Perton action because initially it actually did undertake the defense of that action and did cause an answer to be verified and filed on behalf of Journal. Journal says that the filing of this answer prejudiced it in that once the answer was filed there was a waiver of the rights which Journal might otherwise have had to make appropriate motions against the complaint, such as motions to make the complaint more definite and certain; to strike matter therefrom, or to move on other grounds. It also asserts prejudice arising out of the admission in the answer that Perton was employed by Journal.

After Journal had taken over the defense of the Perton action, it filed an amended answer in which the admission of employment was omitted. Had the case gone to trial, we have no doubt but that the original answer could have been offered in evidence in support of Perton's allegation of employment. However, the case never reached trial and the trial court has found that Journal "suffered no prejudice in the Perton action by any act or conduct on the part of the defendant."

Our attention has not been called to any respect in which the complaint might have been altered to Journal's advantage as a result of any motion on its part and we are unable to perceive any respect in which any prejudice could have been suffered in consequence of the

filing of that answer. In our view this finding of the court is sustained by the record.

The principal contention of the appellant is that Perton was not in fact an employee of Journal and was not injured in the course of any employment for it. Hence it is said his claim and action was within the coverage of the blanket policy and not within the exclusion thereof relating to actions by employees.

General's position, on the other hand, is that whether it, as an insurer, was under a duty to defend an action for damages, was governed by the allegations of the complaint in the action; that since the complaint filed by Perton alleged that he was at the time of the injury in the employment of Journal, it followed that the obligation to defend did not arise, and that the fact that whether Perton was or was not such an employee is not an issue in this case and is wholly immaterial.

In reply to that contention Journal says that an allegation such as this which is ascertainably false should not in logic or in justice afford the insurer a basis to escape liability. It argues that proof of the employment was not essential to recovery; that although the Oregon Guest statute, § 115–1001, O.C. L.A., requires a guest to prove "gross negligence or intoxication or his reckless disregard of the rights of others", yet under the doctrine of Albrecht v. Safeway Stores, 159 Or. 331, 80 P.2d 62, Perton may have made out a case on the basis of ordinary negligence by showing that his transportation was of incidental benefit to Journal even though he was not an employee.

Upon considering these conflicting views of the parties, the trial court, it is evident, adopted General's theory. It did not make any finding as to whether Perton was or was not an employee.[2] It

2. There was introduced in evidence in this case the deposition given by Perton during the pendency of his action. He testified that the accident occurred on March 30, 1946, two days prior to the effective date of his "Carrier's Contract" with Journal (which Journal says shows he was to be an independent contractor). He testified that although "after I got started it would be a commission instead of a wage", yet at the time of the accident he was working for a wage. Jour-

limited its findings in this connection to the allegations of Perton's complaint, i. e., that the complaint alleged a set of facts not covered by the blanket policy, but rather a set of facts covered by the employers' policy which protects against damages in excess of $5000. It held therefore that General properly withdrew from the defense of Perton's action and concluded that Journal could not recover.

Journal argues it is wholly unreasonable to hold that an insurance company, which has furnished a liability insurance such as that secured by the blanket policy, would be excused from the obligations of that policy by the mere fact that the allegations of the injured third person in his complaint set forth a set of facts within the exclusion clause, particularly where the allegations in question are demonstrably false, and where the insured may ultimately be required to pay damages notwithstanding the falsity of those allegations. It relies upon Sills v. Sorenson, 192 Wash. 318, 73 P.2d 798, where the injured party alleged that at the time of his injury, the defendant, insured under the liability policy, employed him for certain purposes. In that case the policy contained an exclusion as to injuries suffered by an employee, as here. There the insurer asserted non-liability under its policy because of the allegations in the complaint. The court on examination of the record found that the injured party was not an employee within the meaning of the excluding clause, and arrived at that conclusion on the basis of the evidence received upon the specific issue as to whether he was or was not an employee. In so doing, it reversed a contrary finding of the trial court.

General, on the other hand, relies upon Leonard v. Maryland Casualty Co., 158 Kan. 263, 146 P.2d 378, which cited but declined to follow the Sills case, supra. That court announced the follow-ing rule, 146 P.2d at page 380: "From these decisions, constituting the great weight of authority, the duty of an insurer under an automobile liability policy to defend an action for damages against its insured is not measured by the proof which may be adduced at the trial nor by the outcome of the litigation but by the allegations of the petition or complaint in the action and by the terms and provisions of the insurance contract."

In the Leonard case, supra, the insurer had, as here, declined to defend the action on the ground that the petition had alleged the existence of an employer and employee relationship between the deceased and the insured. The insured defended the action and won it. The action in the Leonard case was therefore based upon an alleged breach of the insurance policy's provision that the insured would "defend in his name and behalf any suit against the insured alleging such injury * * * even if such suit is groundless, false and fraudulent * * *."

In the case before us we must deal with two separate paragraphs listed with different numbers under the heading "Insuring Agreements". Paragraph I is headed "Bodily Injury and Property Damage Liability". This states the agreement "To pay on behalf of the insured all sums * * * imposed upon him by law (a) for damages * * * because of bodily injury * * * sustained or alleged to have been sustained by any person or persons. * * *"

Paragraph II, on the other hand, is headed "Defense, Settlement, Supplementary Payments". It sets forth the obligation of the insurer "to defend in his name and behalf any suit against the insured alleging such injury * * * even if such suit is groundless, false or fraudulent. * * *" We think it is quite apparent that the circumstances and conditions which may give rise to

nal's Circulation Manager testified that a check for $30 paid to Perton was for mileage, not wages, and that he was

never engaged to carry papers otherwise than as an independent contractor.

obligations under these separate paragraphs may be entirely different. Thus it might well be held that when the insurer is presented with a complaint which on its face states a case not covered by the policy, it could justifiably decline to assume the defense at that stage. This is what happened in the Leonard case, supra. But if at some later stage in the proceedings it should develop that the insured was actually required to pay money to an injured person who in truth and in fact was a person within the provisions of the policy, it would seem to be a little strange if the mere contrary allegation contained in the injured party's complaint would serve completely to relieve the insurer from all obligation under paragraph I. Obviously the one who paid for the insurance is not responsible for the form which the injured person's complaint takes.

The courts have had occasion to allude to the different purposes served by these two paragraphs. Maryland Casualty Co. v. Pearson, 2 Cir., 194 F.2d 284, 287; Lee v. Aetna Casualty & Surety Co., 2 Cir., 178 F.2d 750; American Casualty Co. of Reading, Pa. v. Howard, 4 Cir., 187 F.2d 322, 327.[3] We find no Oregon decision which throws any light upon the matter.

It is to be noted that the two paragraphs of the policy above referred to are couched in different language. Thus paragraph II, relating to the obligation to defend, refers to "any suit against the insured *alleging* such injury". (Emphasis added.) In paragraph I, on the other hand, the obligation to pay refers to liability "imposed upon him by law (a) for damages * * * because of bodily injury * * * *sustained* or alleged to have been sustained, by any person or persons." (Emphasis added.)

This differing phraseology suggests that the obligation to defend is to be determined by what is alleged, while the obligation to pay for liability for bodily injury may be for such injury if actually sustained. In other words, if the injury was in fact sustained and is otherwise within the terms of the policy, the obligation is to pay independently of what may be alleged.

It would appear that the court in Lee v. Aetna Casualty & Surety Co., supra, and Maryland Casualty Co. v. Pearson, supra, must have had this distinction in mind. In the Lee case, a claim under a paragraph which corresponds to paragraph I of the policy here before us, was set forth in the first count of plaintiff's complaint. The refusal of defendant insurer to defend a suit as required by a paragraph corresponding to paragraph II was alleged in the second count. In deciding whether the trial court properly dismissed the first count, the Court of Appeals considered fully the question whether the injuries in question for which recovery was had, were or were not as a matter of fact within the excluding clause of the policy which referred to liabilities arising out of the use by the insured of an elevator. The court examined the evidence at length and concluded that the injuries in fact arose out of the insured's use of an elevator and hence affirmed the dismissal of the first count.

In dealing with the second count relating to the obligation to defend, the court made it plain that its determination in this respect depended upon what the insured party stated in his claim. The court expressed the view that if the complaint sets forth a claim coming within the terms of the policy, then the insurer must defend.[4] The court sus-

---

3. "The obligation to defend suits is entirely independent of the obligation to pay for bodily injuries and property damage."

4. "This language means that the insurer will defend the suit, if the injured party states a claim, which, qua claim, is for an injury 'covered' by the policy; it is the claim which determines the insurer's duty to defend; and it is irrelevant that the insurer may get information from the insured, or from any one else, which indicates, or even demonstrates, that the injury is not in fact 'covered.'" 178 F.2d 751.

tained the judgment for the plaintiff on the second count for the reason that in that case the injured party's complaint alleged injuries which might or might not have happened from the insured's use of the elevator, and hence it was held that the insured must defend since the allegation left the question of coverage or non-coverage open. In Maryland Casualty Co. v. Pearson, supra [194 F.2d 287], the court expressly approved its prior decision in the Lee case, and pointed out that the answers as to whether the insurer was liable for damages recovered by the injured party, and as to whether it was bound to defend the injured party's suit, depended "upon different considerations."

That the liability of the insurer under the two separate paragraphs mentioned must be judged by different considerations is apparent when we consider the converse situation. Thus let us assume that the complaint of the injured party alleges facts which bring his injuries and the liability therefor clearly within the provisions of the liability policy. The appellee here would concede that in that instance as soon as it was presented with the complaint it would be obliged to proceed with the defense. But suppose upon the trial of the injured party's action there should be disclosed a set of facts which would place the liability outside of the policy coverage. In that case it would hardly be contended, we think, that the insured must settle for the damages recovered simply because the complaint had alleged a case within the policy terms. In Maryland Casualty Co. v. Pearson, supra, that precise situation developed and it was held that the insurer was obliged to defend the suit "un-

til it could confine the claim to a recovery that the policy did not cover."

The courts generally have treated the question of liability under these two paragraphs as involving different considerations.[5] We refer to those cases which involved a consideration not merely of the obligation to defend but also of the obligation to pay damages recovered. These tend to disclose the inclination of the courts to apply different standards and tests as to these separate obligations. Thus in United States Sanitary Specialties Corp. v. Globe Indemnity Co., 7 Cir., 204 F.2d 774, the person insured under a liability policy asserted the obligation of the insurer (1) to reimburse the insured for amounts paid the injured claimant in compromise of her claim for injuries; and (2) to pay the expenses incurred by the insured in the defense of the action. The insurance company had declined to defend or to pay the amounts of the compromise settlement. It is interesting to note that the court treated these two claims against the insurer separately and as involving separate considerations. Holding that the insurer was not liable upon either item, the court disposed of that relating to the duty to defend simply by reference to the allegations of the personal injury complaint, and concluded that since the complaint showed on its face that the injuries arose out of operations which were excluded from the policy, the insurer was under no duty to defend against the action.

But the court did not suggest that this condition of the pleading had any bearing whatever upon the other claimed obligation,—that is, the obligation to pay the damages. In order to arrive at

5. Cases like Leonard v. Maryland Casualty Co., supra, do not furnish any answer to our problem here. In those cases the insurer has declined all responsibility and the insured has undertaken the defense and has been successful; then when the insured has sued the insurer the only question involved has related to the obligation to defend. As in the Leonard case, the decisions have been

that this depends upon the allegations of the complaint. In this category are: U. S. Fidelity & Guaranty Co. v. Baldwin Motor Co., Tex.Com.App., 34 S.W.2d 815; Inter-State Oil Co. v. Equity Mut. Ins. Co., Mo.App., 183 S.W.2d 328; and Fessenden School v. American Mut. Liability Ins. Co., 289 Mass. 124, 193 N.E. 558.

a conclusion with respect to that, the court examined the facts in detail, and finding that as a matter of fact the accident in question was not within the coverage of the policy, determined that the insurer was not liable in this respect either. United Pac. Ins. Co. v. Northwestern Nat. Ins. Co., 10 Cir., 185 F.2d 443, is on all fours with the preceding case. There the court held that the insurer was not liable upon either of the two types of obligations and was neither obligated to pay damages recovered by the third party claimant, nor to pay for the cost of defense incurred by the insured. As in the preceding case, it disposed of the claim for defense costs by alluding to the fact that the third person's complaint did not allege a cause of action which would be within the coverage of the policy. But its determination of non-liability for the property damage claimed by the third person was arrived at only after an extensive analysis of the evidence relating to the circumstances under which the damage was caused. Again the court did not suggest that this question was settled by the allegations of the third person's complaint.

There are also decisions in which the insurer has been held liable to the insured both to satisfy the liability to the third person and to defend the third person's action. In those cases the allegations of the third person's complaint disclosed claims within the coverage of the policy. But, as we have previously suggested, no court has held that merely because of this state of the pleadings the insurer is obliged not merely to defend but also to pay if recovery is had. In such cases the obligation of payment has been predicated upon the court's determination that as a matter of fact the liability and the damages claimed by

the third person were within the policy's coverage. Lamb v. Belt Casualty Co., 3 Cal.App.2d 624, 40 P.2d 311; Toms v. Hartford Fire Ins. Co., 146 Ohio St. 39, 63 N.E.2d 909; London Guarantee & Accident Co. v. C. B. White & Bros., 188 Va. 195, 49 S.E.2d 254; Hardware Mut. Casualty Co. v. Schantz, 5 Cir., 186 F.2d 868. Cf. Trader's and General Ins. Co. v. Rudco Oil & Gas Co., 10 Cir., 129 F. 2d 621, 142 A.L.R. 799.

We hold therefore that even although it may be considered that the pertinent complaint stated a case necessarily outside of the policy coverage, and that in consequence when this complaint was handed to General it owed no duty to defend, yet we think that a policy of this kind will not stand a construction which would permit General to escape its obligation under paragraph I merely because of an allegation of employment made by a third party claimant for whose acts and allegations the insured can hardly be held responsible. The contract drawn and sold by it ought not thus to be construed so strongly in its own favor. One of the outstanding facts of modern litigation is the diminishing importance of initial pleadings in the light of the ease of amendment and the use of pretrial proceedings to lay the pleadings on the shelf. This "plasticity of modern pleading" was alluded to in Lee v. Aetna Casualty & Surety Co., supra, where the court seems to suggest that if an initial pleading were later amended to disclose for the first time a case within the policy, the insurer might then have to take over the defense.[6] We are not confronted with that situation here, but we think that the considerations there mentioned are additional reasons why the court below was in error in assuming that the question of liability not only under paragraph II but

---

6. "The only exception we can think of is that the injured party might conceivably recover on a claim, which, as he had alleged it, was outside the policy; but which, as it turned out, the insurer was bound to pay. Such is the plasticity of modern pleadings that no one can be positive that that could not happen. In such

a case of course the insurer would not have to defend; yet, even then, as soon as, during the course of the trial, the changed character of the claim appeared, we need not say that the insured might not insist that the insurer take over the defense." 178 F.2d 752–753.

under paragraph I as well, can be disposed of by a mere examination of the allegations of the Perton complaint.

Even if we assume, as we do, that under the law of Oregon the allegations of the complaint were such as to excuse General from its obligations to defend under paragraph II, yet there lurks in the record as now presented to us a question not argued by the parties but to which we should allude.

■ The Perton complaint alleged damages in the sum of $15,481. If he suffered that much damage, and if he was an employee, Journal's liability was covered by the employers' policy. That policy also contained a paragraph II requiring General "to defend in the name and on behalf of the insured any suit against the insurer alleging such injury and seeking damages on account thereof even if such suit is groundless, false or fraudulent." It is difficult to perceive why it was not the duty of General, in view of the amount demanded, to defend that suit pursuant to this obligation of the employers' policy. It is true that Journal's complaint in the court below was drawn upon the theory that the duty to defend arose under the blanket policy, but the original pleadings were superseded by the pretrial order which set up the facts with respect to both policies.

The views which we have here expressed are such as to require that the cause be remanded with directions to the trial court to receive evidence and to make findings for the purpose of determining whether as a matter of fact Perton at the time of his injuries was, or was not, so in the employment of Journal as to bring him within the exclusion of the blanket policy relating to bodily injuries sustained by persons while engaged in the employment of the insured. If it be found that he was not so excluded Journal will be entitled to recover from General the sum of $2000 mentioned in paragraph XIII of the agreed facts stated in the pretrial order, together with legal interest thereon and reasonable attorneys' fees.

On the other hand, if the court should find that Perton was then in fact so engaged in the employment of Journal, judgment must be for General and that Journal take nothing by said action. While as we have indicated, if Perton was an employee, his complaint demanding in excess of $5000 in damages, would appear to have given rise to an obligation on the part of General to defend under paragraph II of the employer's policy, yet since it appears that the cost of defense and settlement did not exceed $330, it is obvious that General's contribution of $1000 more than covered any possible obligation on its part in respect to the defense.

The judgment is reversed and the cause is remanded with directions to take further proceedings in accordance with this opinion.