**CITY OF MYRTLE POINT, a Municipal corporation, Plaintiff,**

v.

**PACIFIC INDEMNITY COMPANY, a corporation, Defendant.**

Civ. No. 62–216.

United States District Court
D. Oregon.

March 29, 1963.

**194**

F. C. Meldrum and Craig Oleson, Dement & Meldrum, Myrtle Point, Or., Jack H. Dunn, Maguire, Shields, Morrison, Bailey & Kester, Portland, Or., for plaintiff.

Robert T. Mautz, Wayne A. Williamson, Roland F. Banks, Jr., Mautz, Souther, Spaulding, Kinsey & Williamson, Portland, Or., for defendant.

EAST, District Judge.

## ACTIONS AGAINST CITY

On December 14, 1960, Agnes E. Estelle (Agnes) instituted her action in the Circuit Court of the State of Oregon for Coos County against the City of Myrtle Point, a municipal corporation of the State of Oregon (City), seeking the recovery of damages for personal injuries. In the first count of the complaint Agnes alleged, *inter alia:*

"During and within two years from the filing hereof, City has continuously, wrongfully and unlawfully produced, caused and permitted offensive smells, fumes and odors to escape from the said sewage disposal plant facilities (owned and operated by City in close proximity to her home) to pollute the atmosphere in and around the premises owned by Plaintiff, and has continuously produced, caused and permitted said smells, fumes and odors to penetrate the said residence occupied by Plaintiff, and has thereby substantially interfered with her use and enjoyment of her property, thereby constituting nuisance, * * *"

and as a proximate result thereof she suffered injury to her person.

In the second count of the complaint, Agnes alleged that her personal injuries were proximately caused by "the active wrongdoing and negligence of" City of its operation of the sewage disposal plant in one or more of the following particulars:

"1. It operated the plant with inadequate filter recirculation.

"2. It operated and maintained its filter recirculation pump in an improper manner and at improper efficiency.

"3. It operated and maintained the plant without use of a second filter recirculation pump during periods of maximum load.

"4. It operated and maintained the plant without a chlorine residule of 0.5 PPM or more at all times.

"5. It received and processed an average sewage flow and BOD loading in excess of that for which the plant was designed.

"6. It operated and maintained the plant without sufficient or adequate equipment to process the sewage flow."

At the same time, Agnes and her husband Vernon, as owners of the mentioned home property, instituted a separate action in the same court to recover damages to and depreciated value of their home property. They alleged in two separate counts the identical grounds of causation.

## CONTRACT OF INSURANCE

Throughout the critical times, plaintiff City held a public liability insurance policy with defendant Pacific Indemnity Company (Pacific) and it appears from the agreed statement of facts of the pretrial order herein that by virtue of such public liability insurance Pacific agreed as follows:

"(a) To pay, on behalf of the insured, all sums (within the

Limits of Liability) which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death, at any time, resulting therefrom, sustained by any person.

"(b) To pay, on behalf of the insured, all sums (within the Limits of Liability) which the insured shall become legally obligated to pay as damages because of injury to or destruction of, property, including the loss of use thereof, caused by accident.

"(c) With respect to such insurance as is afforded by this policy, the company shall:

"(i) defend any suit against the insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent."

### PACIFIC'S DEFENSE

City timely tendered to Pacific the defense of the two Estelle actions, and on December 20, 1960, Pacific referred the file to its attorneys at Eugene, Oregon, who immediately entered upon the preparation of the defenses, and made timely appearances for City in each case.

I find from the evidence adduced herein that:

1) On June 19, 1961, Pacific's attorneys took discovery depositions of Agnes and Vernon at Eugene (a place of office of their attorneys) under stipulation for the use of the depositions in either or both of the actions;

2) Agnes' action reached issue and a setting for trial first, and Pacific's counsel entered upon the last days' preparation for trial and viewed the area of the disposal plant for the first time;

3) It was at this point that Pacific first questioned coverage under the policy as to either of the actions, as counsel then "decided the problem apparently to be one of a continuing situation," further, "that one action would not solve the problem and City would probably need an easement for fume dispersion;"

4) After the selection of the jury in Agnes' cause, Pacific settled her claim for $3,000 and that action was dismissed;

I further find that:

5) During negotiations for settlement of Agnes' claim, her counsel offered Pacific a "package deal" to settle both actions for $6,000, and Pacific's counsel conveyed this offer to City's attorney in this substance:

"We can settle the personal injury action for $3,000 and wash the whole thing out for $6,000."

and advised City that Pacific would in any event, as it did, settle Agnes' personal injury claim for $3,000 but would deny liability on the property damage action, since damage alleged therein was not "caused by accident";

6) City refused to contribute $3,000 to effectuate the "package deal" and demanded that Pacific defend the real property damage action;

7) On July 24, 1961, Pacific's attorney advised City by letter, through its attorney:

"We are enclosing herewith the pleadings in connection with (Agnes' and Vernon's action) for your files.

"As you know, we settled the personal injury suit entitled 'Agnes Estelle vs. City of Myrtle Point' during the trial of the matter. The Plaintiff's attorney, E. B. Sahlstrom, has now filed an Amended Complaint in the case entitled 'Agnes & Vernon Estelle vs. City of Myrtle Point'. This action is for damages for the alleged depreciation in value of the Plaintiff's land due to the presence of the sewage disposal treatment plant of the City of Myrtle Point. Your policy of insurance with Pacific Indemnity Company does not indemnify the City of Myrtle Point against a property damage action

of this nature. Therefore, it will be necessary for us to withdraw from the defense of this matter. We will contact the Plaintiff's attorney to obtain a Stipulation giving you additional time in which to file an answer in this matter."

On August 2, 1961, Pacific advised City by letter:

"At the time that we undertook the defense of the property damage action our file reflected that the various city officials of the City of Myrtle Point and those employees of the City of Myrtle Point who were charged with the responsibility of the operation of the sewage disposal plant denied any knowledge that the plant emitted any offensive odors. Our investigation indicated that the foul odor in the vicinity of the claimant's residence was attributable to the mill pond of a nearby lumber company rather than the sewage disposal plant.

"After we had assumed defense of the case on the basis that the City of Myrtle Point through its officials and employees had no knowledge that the sewage disposal plant emitted any offensive odors, information was developed that the City of Myrtle Point had received complaints, prior to October 20, 1960, that an odor problem did exist at the sewage treatment plant. In view of this disclosure there is no alternative but to advise the insured that this was not a proper matter to accept under the coverage afforded by the above listed policy and withdraw from the defense of this case.";

### CITY'S DEFENSE

8) Agnes' and Vernon's amended complaint, pursuant to an order of the court granted upon motion of Pacific's attorneys that the complaint be made more definite and certain, added the metes and bounds description of their property and an allegation that the property, in addition to residential use, was used by them "for commercial purposes and rentals,"

and raised their demand for damages from $10,000 to $20,000;

9) City, under protest, assumed the defense of this amended complaint and cause, and on November 6, 1961, four days prior to trial, settled the action of Agnes and Vernon by the payment of $15,000, of which $5,000 was paid "in full and complete compromise and settlement of the litigation," and the sum of $10,000 for the lease-purchase of the real property involved; and

10) City incurred attorney's fees in the amount of $1,000 and appraiser's fees of $200 incident to the defense of the case and the transaction.

City contends in the pretrial order, *inter alia*, that the

"allegations of (Agnes' and Vernon's complaint) * * * were such as to be within the scope of the coverage afforded (City) under its contract of insurance * * *"

and, further, that by reason of the part that Pacific played in the defense of Agnes' action and to the extent it defended the real property damage action, City was

"substantially prejudiced in its subsequent defense of the real property action and that Pacific is thereby estopped to deny coverage under its agreement to pay * * * damages * * * because of injury to * * * property * * * caused by accident (b) above and seeks to recover expense of compromise settlement and defense."

At the outset, it is manifest that Pacific's contractual duty under its policy with City in connection with the real property damage action is two-phased—"to pay" under (b) and "to defend" under (c) (i) above, and the answer whether Pacific is liable under either or both of these duties depends "upon different considerations," respectively. Journal Publishing Co. v. General Casualty Co., 9 Cir., 210 F.2d 202, 208. We have no way of knowing what Agnes' and Vernon's proof as to causation would have ultimately been—wheth-

er they would have recovered upon the nuisance theory of the first count or upon the negligent mishap theory of the second count, as the cause of liability, if any, was and never will be tried. However, we do know from the evidence adduced at the hearing of this cause that the sewage disposal plant did suffer an explosion during the fall of 1958 which disrupted the plant's normal operation, and further, that during 1959 pumping and deodorizing facilities were overtaxed. In any event, and for the reasons hereinafter stated, it is not necessary for this court to determine either

1) Whether the alleged damages to the real property of Agnes and Vernon were "caused by accident" or

2) Whether Pacific is estopped to deny coverage under its promise "to pay" under (b) of its policy, as contended.

### PACIFIC'S DUTY TO DEFEND

■ We turn now to Pacific's potential liability under its promise to "defend" (c) (i) above. This Circuit approves of the "view" of the Second Circuit that:

> "If the complaint sets forth a claim coming within the terms of the policy, then the insurer must defend." Journal, supra, 210 F.2d p. 207, quoting Lee v. Aetna Casualty, 178 F.2d 750 (2nd Cir. 1949).

> "This language ("c" "i") means that the insurer will defend the suit, if the injured party states a claim, which, qua claim, is for an injury 'covered' by the policy. It is the claim which determines the insurer's duty to defend; and it is irrelevant that the insurer may get information *from the insured,* [italics supplied], or from any other one else, which indicates, or even demonstrates, that the injury is not in fact 'covered.' "

It seems that under this view and rule the insurer would be obliged to defend the suit "until it could confine the claim to a recovery that the policy did not cover." Journal, supra, p. 208.

■ Without oversimplyfying the judicial test of whether a given result is alleged to have been "caused by accident," it does seem safe to say that:

> Acts which are done with intent or knowledge of the perpetrator and which continue over a substantial period of time and continuously cause damage as a normal and probable consequence of the acts, cannot be termed "accident," but are more in the nature of a nuisance causing damage. American Casualty Co. v. Minnesota Farm Bureau, 270 F.2d 686 (8th Cir. 1959); Kuckenberg v. Hartford Accident, 226 F.2d 225 (9th Cir. 1955); United States Fidelity v. Briscoe, 205 Okl. 618, 239 P.2d 754 (1951).

This could well be the situation complained of in count one of Agnes' and Vernon's complaint.

■■ On the other hand, I suggest that negligent acts such as using malfunctioning or inadequate apparatus in a sewage disposal plant, in absence of intent to cause harm resulting in damage, do not in and of themselves negate a causation by accident. And, further, the element of an unforeseen or unexpected damage or consequence, as distinguished from a normal and probable consequence, from a negligent act is cardinal in describing a causation by accident. Kuckenberg, supra; Bundy Tubing Co. v. Royal Indemnity Co., 298 F.2d 151 (6th Cir. 1962); Hauenstein v. St. Paul, 242 Minn. 354, 62 N.W.2d 122.

Such negligent and unintentional acts with unforeseeable consequences on the part of City are well pleaded and alleged in count two of Agnes' and Vernon's amended complaint, i. e., malfunctioning of equipment; failure to use equipment efficiently. Of most importance is the fact that the alleged damage suffered was allegedly due to maloperation of the disposal plant rather than from "a normal and probable consequence of (owning and maintaining a sewage disposal plant) as the (City) undertook," as was the

situation in Kuckenberg, 226 F.2d p. 226.

These allegations of count two frame "issues * * * of negligence" and "(do) not remove them from the category of accident."

"The (count two) * * * set forth claims of possible coverage by the insurance which required the insurer to defend at least until it could confine the claims to a recovery that the policy did not cover." Bundy, supra, 298 F.2d pp. 153–4.

"Even though one of the claims of (Agnes Wolfe and Vernon) against Sears (City) came within the exceptions to coverage, the insurer was under a duty to defend, if upon any ground there might be a recovery within the policy terms * * *" American Indemnity Co. v. Sears, Roebuck & Co., 195 F.2d 353, 356 (6th Cir. 1952).

" '* * * the policy should be so construed as to require the insurer to defend where it is apparent from the pleading that there is a reasonable possibility that the insured (injured party) may be able, under the allegations of the complaint, to prove that his injuries were caused by some act or omission covered by the terms of the contract.' " Kirkpatrick v. Consolidated Underwriters, 227 F.2d 228, 231 (4th Cir. 1955), citing Employers Mutual Liability v. Hendrix, 199 F.2d 53, 56 (4th Cir. 1952). Compare Tidewater Associated Oil v. Northwest Casualty Co., 264 F.2d 879 (9th Cir. 1959).

█ It is now manifest that when faced with the allegations of count two, Pacific had the contractual duty to defend City against Agnes' and Vernon's action "until it could confine the claim to a recovery that the policy did not cover." This duty Pacific did not perform, and thereby breached its agreement to defend and must be held liable for City's resulting provable damage.

█ Pacific withdrew at its own risk, but, of course, City had the duty to use reasonable means to prevent default and mitigate its potential liability of $20,000, albeit on an alleged loss covered by the policy. This duty City did perform in good faith, at a cost to it of $1,000 for legal representation, and $5,000 for a compromise settlement in lieu of further litigation.

I now borrow this language from Employers Mutual, supra, 199 F.2d at p. 58:

"Since, as we have seen the Insurance Company (Pacific), in this case failed to perform its contract to defend, the questions which remain for decision are the reasonableness of the fee charged by Hendrix' (City's) attorneys for their services and the propriety and reasonableness of the settlement of the counter (Agnes' and Vernon's) claims."

█ I find from the testimony of Mr. F. C. Meldrum, City's attorney, that his charge of $1,000 for services rendered in taking over the defense of the action following the repudiation thereof by Pacific is reasonable and was necessary for City to incur.

█ Now, as the propriety and reasonableness of the $5,000 settlement— City was placed in an almost impossible situation in face of the $3,000 settlement for Agnes' injuries arising from identical alleged causation and being abandoned to its own defenses on the threshold of trial. Pacific and City had acknowledged the high probability of injury and City knew there had been actual prior mishap in operation and control at the plant. City surely had to anticipate that this prior operational mishap would be part of Agnes' and Vernon's proof and the probability of liability must have loomed very high. And, again in the language of Employers Mutual, supra, 199 F.2d at p. 60:

"It is familiar practice for defendants of financial responsibility to take into account the inclination of juries to award compensation to injured parties."

So, I venture that the past history of mishap and malfunctioning at the plant,

the settlement with Agnes and the apparent temperament of Agnes and Vernon made this law action a veritable Sword of Damocles over City. I conclude that the pretrial settlement of a potent $20,000 claim for $5,000 under these allegations and these circumstances was not only with propriety, but prudent and provident. I hold it to be a reasonable expense of defense in lieu of an improvident indulgence of defending a law suit to a sought-for and hoped-for, but yet evasive defendant's verdict.

Counsel for City may present proposed findings, conclusions and judgment.