Marvin W. RUNYAN, H. L. Thompson, and Ronald E. Ries, copartners doing business as Stevens & Thompson, Plaintiffs,

v.

CONTINENTAL CASUALTY COMPANY, an Illinois corporation, Defendant.

Civ. No. 63-409.

United States District Court
D. Oregon.

Aug. 27, 1964.

George Fraser, Rockwood, Davies, Biggs, Strayer & Stoel, Portland, Or., Walter H. Evans, Jr., Portland, Or., for plaintiffs.

Kenneth E. Roberts, Mautz, Souther, Spaulding, Kinsey & Williamson, Portland, Or., for defendant.

EAST, District Judge.

Plaintiffs are consulting engineers associated as copartners and doing business under the name of Stevens & Thompson (S&T). The defendant Continental Casualty Company (Continental) is a citizen of and maintains its principal place of business in the State of Illinois, and the amount in controversy exceeds $10,000.00.

Continental issued to S&T its "architects' and/or engineers' professional liability policy" for the original one-calendar-year period commencing July 1, 1961.

In June of 1959, S&T entered into a contract with the Oak Lodge Sanitary District No. 2 of Clackamas County, Oregon (District), wherein it agreed to provide requisite engineering services in connection with the construction of the District's sewage project. In the course of performing the contract, S&T prepared "specifications for construction of a sanitary sewer system * * *" for the District, including, inter alia, the following provisions:

"3.5.1  *Authority of the Engineer*

"To prevent misunderstandings, disputes and litigation, it is expressly understood by all the parties to the contract * * * that the engineer shall, in all cases, determine any and all questions which may arise concerning the quality, quantity and acceptability of materials furnished and work performed; the manner and rate of progress of the performance of all work * * * and his estimate and decisions in these matters shall be final. * * *

"It is further understood that all work to be done under the contract shall be done under the supervision and direction of the engineer; that said work will not be considered completed until approved and accepted by the engineer and by the owner; that the *contractor* shall at all times carry out and fulfill the *instructions and directions of the engineer* in so far as the work to be performed under the contract is concerned; * * *

"3.8.7  *Character of Workmen and Equipment*

"The contractor shall employ only competent and efficient laborers, mechanics, or artisans; and whenever, *in the opinion of the engineer,* any *employee is careless or incompetent,* or obstructs the progress of the work, or acts contrary to instructions, or conducts himself improperly, *the contractor shall,* upon complaint of the engineer, *discharge or otherwise remove him* from the work and not employ him again upon it." [Italics supplied.]

Throughout the pertinent times and transactions:

Thomas D. Telford (Telford) was S&T's agent and representative, with the authority, capacity, and title of "resident engineer" on the project; and

Lee Hoffman, Inc., was engaged as the general contractor on the project, with its employee Martin Mischel (Mischel) as "construction superintendent."

On August 16, 1961, Mischel filed an action in the Circuit Court of the State of Oregon for the County of Multnomah, No. 277970, naming and joining Marvin Runyan and H. L. Thompson (copartners doing business as Stevens & Thompson), and Telford, as defendants. The original complaint and the three subsequent amended complaints each stated two causes of action against S&T and Telford. The Third Amended Complaint in the First Cause of Action alleged the following facts, inter alia:

"That beginning approximately February 1, 1961, said defendants, and each of them, engaged in a course of conduct towards this plaintiff intending to harass this plaintiff in his work for said Lee Hoffman, Inc., and sent a letter to Lee Hoffman, Inc. under date of April 14, 1961, falsely accusing this plaintiff of issuing improper orders in his work, and sent a letter to Lee Hoffman, Inc. under date of June 6, 1961, falsely accusing this plaintiff of violating his duties of notification to inspectors in connection with his work, and made statements, orally and in writing, that this plaintiff was an incompetent construction superintendent and violated orders given to this plaintiff by said defendants, and on or about June 14, 1961, by such conduct and statements, caused Lee Hoffman, Inc. to remove this plaintiff as construction superintendent upon said project and caused his discharge by Lee Hoffman, Inc. on or about July 1, 1961."

The Second Cause of Action contains the following pertinent allegations of fact:

"That on or about June 14, 1961, defendant Telford, as agent and employee of defendants Runyan and Thompson, and acting within the scope of his employment, in a meeting attended by various persons constituting members of the public, and by certain officers, agents and employees of that certain corporation known as the Oak Lodge Sanitary District No. 2, in a public meeting-place near Milwaukie, Oregon, made, uttered and published certain false and scandalous statements of and concerning this plaintiff in the presence of said persons by saying the following words in substance:

"'Martin Mischel is an incompetent construction superintendent and has repeatedly covered up for Lee Hoffman under our plans and specifications.'

meaning that this plaintiff had engaged in nefarious, unlawful and fraudulent acts on behalf of said Lee Hoffman, Inc., a corporation, and said Oak Lodge Sanitary District No. 2 for installation of certain sewer lines, plans and specifications for which had been drawn by said defendants, and each of them."

Of course, the First Cause of Action sounds in malicious and unjustified interference with contract, and the Second Cause of Action in slander.

In due course S&T tendered each of the two alleged causes of action for defense to Continental, which rejected the tenders of defense by letters dated October 24, 1961, and August 24, 1962.

S&T successfully defended the two causes through Mischel's case in chief to a judgment of involuntary nonsuit, at an alleged cost and expense to them, including attorneys' fees, in the amount of $10,604.62.

S&T here contends that the wrongful "errors, omissions and acts" allegedly committed by it in each of the Mischel actions were covered by Continental's "architect and/or engineers" liability policy, and seeks to recover its cost and expense of defense.

Continental counters with the following basic contentions of nonliability:

"1) The alleged acts of plaintiffs [S&T] as set out in the Mischel complaint were not committed in the

performance of 'customary and usual' engineering services;

"2) The acts as alleged in the complaint were intentional and therefore not covered because:

"(a) The policy specifically excludes coverage of intentional losses; (b) A policy of insurance which insures a person against the consequences of his intentional acts in inflicting injury on another is void because it is against the public policy of the State of Oregon; and

"3) The acts as alleged in the complaint occurred prior to the effective date of the insurance policy."

█ For the reasons later laid out, I conclude that each of Continental's three contentions of nonliability are untenable and that Continental was bound to defend S&T against at least Mischel's first alleged cause of action, and, for its failure to defend, is liable to indemnify S&T for its reasonable cost and expense incurred in successfully defending the action. (City of Myrtle Point v. Pacific Indemnity Company, 233 F.Supp. 193 (D.Or.1963)).

### CONTINENTAL'S CONTENTION I

Material to us now are these provisions of the liability policy:

"I. *COVERAGE*.

"To pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon the insured by law for damages resulting from any claim made against the insured arising out of the performance of professional services for others in the insured's capacity as Architects and/or Engineers, and caused by any error, omission or act of the insured or of any person employed by the insured, or of any others for whose acts the insured is legally liable."

Paragraph V(f) modifies this coverage clause as follows:

"V. *EXCLUSIONS*.

"The company shall not be liable with respect to any claim made against the insured:

\*     \*     \*     \*     \*     \*

"(f) for injury to, or destruction of property resulting from any error, omission or act of the Named insured, his agents or employees, not arising out of the customary and usual performance of professional services for others in the insured's capacity as Architect and/or Engineer and including the failure or omission on the part of the insured to effect or maintain insurance, or any required bonds."

I will assume that the alleged injury to Mischel in his First Cause of Action (interruption of contractual rights) is an injury to or destruction of his property and that exclusion V(f) above is thereby brought into play. Nevertheless, I conclude that the exclusion does not apply and Continental cannot avoid its liability thereunder. The engineering specifications for the project make it plain that the engineers had the responsibility of "quality control" throughout the construction work. This duty was broken down into two control categories—materials furnished and work performed. As a necessary part of this responsibility, S&T, through its resident engineer, had the duty to supervise and inspect, and the power to criticize and reject. Under specification 3.8.7, supra, the engineers, with their opinion of Mischel's incompetence, were duty-bound to have Mischel removed from the job.

It is manifest from a reading of the allegations of Mischel's First Cause of Action that Telford spoke, wrote and acted directly in the performance of his principal's professional services for the District in the capacity of architects and/or engineers. It is these errors, omissions and acts of S&T that are alleged to have been wrongful and the cause of Mischel's injury. There is no technical evidence contrary, and common knowledge tells us that the duty, coupled

with the power of enforcement, to reject subpar workmanship and have incompetent workmen discharged must accompany and is a necessary part of an engineer's "customary and usual" professional services, powers and responsibilities.

What Mischel complains of and alleges in his First Cause of Action is that S&T wrongfully performed its professional services for the District and in the course thereof caused him injury, for which S&T is liable. This, in short, is the purpose in life of Paragraph I—"Coverage."

## CONTINENTAL'S CONTENTION NO. 2

Continental claims that any liability it may have had under the allegations of Mischel's First Cause of Action is excluded by the policy's "Intentional Loss" exclusionary provision V(c):

"(c) for any loss caused intentionally by or at the direction of the insured."

Mischel alleges that S&T was wrong in the basis or premise adopted in causing his discharge, and Continental contends that S&T thereby wilfully intended to injure him, solely for the purpose of creating a loss.

Concededly, the words, writing and action of Telford and S&T in determining the advisability of and requesting Mischel's discharge by Lee Hoffman, Inc. were intentionally committed; however, here the query is whether the wrongful discharge of or injury to Mischel, with resulting liability and loss to S&T, was intentional. The same query is presented and answered in dealing with Continental's "public policy" defense, in which Continental contends that the Oregon rule

" * * * is clearly to the effect that an insurance policy which purports to insure against the consequences of the insured's intentional torts is void." Citing Isenhart v. General Casualty Co., 233 Or. 49, 377 P.2d 26 (1962).

Isenhart involved the tort of assault and battery. The insured tort feasor was covered by a "general liability" policy which the court assumed did not include an "intentional loss" exclusion. After reviewing the law from Oregon and the rest of the country in this area, the court concluded:

"We hold that a clause in a contract of insurance purporting to indemnify the insured for damages recovered against him as a consequence of his intentional conduct in inflicting injury upon another is unenforceable by the insured on the ground that to permit recovery would be against public policy." 377 P.2d 28.

Of course, S&T intended to cause Mischel injury to the extent of his losing his job and immediate employment as "construction superintendent" on the project and some "loss" in that context. Such supervisory control of continued employment—that is, the right to hire and fire—is a necessary part and parcel of the supervision of production and is a legitimate function. The resulting loss to the employee is incidental to a rightful act of firing and is not recoverable. Such a loss only becomes recoverable when it is caused wrongfully, and Paragraph V(c) applies only when the wrongful conduct was intentional or directed by the insured to cause the loss. For example, an x-ray technician intentionally manipulates the lever to activate the tube, but he does not intentionally cause the burn to the patient which results from the technician's miscalculation of time and energy. See Traveler's Insurance Co. v. Reed, Tex.Civ.App., 135 S.W. 2d 611 (1939).

Needless to say, S&T, by its defense, denied that it was wrong in the premise or basis for seeking the discharge of Mischel, or that it intentionally sought the discharge solely for the purpose of causing direct loss. Furthermore, Continental has utterly failed to show or prove by satisfactory evidence otherwise.

From the foregoing, it is manifest that Mischel's First Cause of Action alleges a claim against S&T

"* * * arising out of the performance of professional services for others in [S&T's] capacity as Architects and/or Engineers * * *."

and that S&T has indemnifying coverage under Paragraph I—"Coverage," of the policy.

In addition, Continental has completely ignored its further contractual obligation to S&T, separate and distinct from Paragraph I—"Coverage," namely, Paragraph II—"Defense," which provides that Continental shall:

"* * * (a) defend any suit * * * against the insured alleging such error, omission or act and seeking damage on account thereof, even if such suit is groundless, false or fraudulent; * * *"

It follows that Continental's contractual duty under its policy with S&T in connection with Mischel's First Cause of Action is two-phased:

1) "to pay" under Paragraph I and
2) "defend" under Paragraph II

and the answer to whether Continental is liable under either or both of these duties depends "upon different considerations," respectively. City of Myrtle Point, supra, citing Journal Pub. Co. v. General Cas. Co., 210 F.2d 202, 208 (9th Cir. 1954).

As to Continental's potential liability under its promise to "Defend," Paragraph II, the Ninth Circuit approves the "view" of the Second Circuit that:

"* * * if the complaint sets forth a claim coming within the terms of the policy, then the insurer must defend." Journal, supra, p. 207, citing Lee v. Aetna Casualty, 178 F.2d 750 (2nd Cir. 1949).

As the court noted in Lee:

"This language means that the insurer will defend the suit, if the injured party states a claim, which, qua claim, is for an injury 'covered' by the policy, it is the claim which determines the insurer's duty to defend; and it is irrelevant that the insurer may get information *from the insured* [italics supplied], or from any one else, which indicates, or even demonstrates, that the injury is not in fact 'covered.'" 178 F.2d 751.

Even though it might be said that Mischel's Second Cause of Action (alleged slander at a public meeting) was not a loss or specifically covered by Paragraph I of Continental's policy:

"* * * the insurer was under a duty to defend, if upon any ground there might be a recovery within the policy terms. * * *" American Indemnity Co. v. Sears, Roebuck & Co., 195 F.2d 353, 356 (6th Cir. 1952).

As was held in City of Myrtle Point, supra, p. 10:

"'"* * * the policy should be so construed as to require the insurer to defend where it is apparent from the pleading that there is a reasonable possibility that the insured (injured party) may be able, under the allegations of the complaint, to prove that his injuries were caused by some act or omission covered by the terms of the contract."' Kirkpatrick v. Consolidated Underwriters, 227 F.2d 228, 231 (4th Cir. 1955), citing Employers Mutual Liability v. Hendrix, 199 F.2d 53, 56 (4th Cir. 1952). Compare Tidewater Association Oil v. Northwest Casualty Co., 264 F.2d 879 (9th Cir. 1959)."

As this Court stated in City of Myrtle Point, supra, pp. 9, 10: It is now manifest that when faced with the allegations of the First Cause of Action, Continental had the contractual duty to defend S&T against Mischel's action, "until (Continental) could confine the claim to a recovery that the policy did not cover." This duty Continental did not perform, thereby breaching its agreement to defend, and must be held liable for S&T's resulting provable damage.

# 220

## CONTINENTAL'S CONTENTION NO. 3

Paragraph IV—"Policy Period," provides, inter alia:

> "This policy applies only to errors, omissions or acts * * * (b) which occurred prior to the effective date of the policy and then only if claim is made during the policy period, provided:
>
> "1) No insured had any knowledge of such prior error, omission or act at the effective date of the policy * * *."

█ It is conclusive that the errors, omissions or acts of S&T complained of by Mischel occurred prior to the effective date of the policy, July 1, 1961, but that claim thereon was made after July 1, 1961, and during the policy period. There is an absolute failure of a showing or proof by satisfactory evidence that S&T had any knowledge that any act or doings of Telford in the course of performing his duties as resident engineer were erroneous, omissive or wrongful, or in anywise the basis of a claim against S&T. It was not until the alleged errors, omissions and acts of S&T had their effect in causing Mischel's discharge on July 1 (within the policy period) that Mischel had any alleged claim or cause of action against S&T. It was not until then that the acts and doings of Telford could become errors, omissions or wrongful acts, imposing a liability covered in Paragraph I, and, accordingly, Continental can find no exclusion of its liability to pay or defend under Paragraph IV.

## CONCLUSION

Continental declined the tender of defense and failed to defend at its own risk, and I again borrow language from Employers Mutual, supra, 199 F.2d at p. 58:

> "Since, as we have seen the Insurance Company [Continental], in this case failed to perform its contract to defend, the questions which remain for decision are the reasonableness of the fee charged by Hendrix' [S&T's] attorneys for their services,

* * *" Cited in Myrtle Point, supra, p. 10.

█ I find from the evidence that S&T incurred the sum of $587.22 (Exhibit 19) as reasonable and necessary costs and disbursements of defense and that the sum of $9,675.00 was reasonably and necessarily incurred as attorney's fees in defending against Mischel's claims, without probability or practicability of segregating between the two alleged causes of action, as defense of one would necessarily aid the defense of the other.

Further, I find from the evidence that the sum of $3200.00 is a reasonable sum to be allowed plaintiffs herein as attorney's fees for the prosecution of this action.

From the foregoing, I conclude that the plaintiffs are entitled to have and recover from the defendant the sum of $10,262.22, together with the sum of $3200.00 as attorney's fees and costs in this action.

I adopt the foregoing memorandum of decision, findings and conclusions as the Court's findings of fact and conclusions of law in these proceedings, as permitted by Rule 52(a), F.R.Civ.P.