**UPPER COLUMBIA RIVER TOWING CO., a corporation, Appellant,**

v.

**MARYLAND CASUALTY COMPANY, a corporation, Appellee (two cases).**

**Nos. 17765, 17766.**

United States Court of Appeals
Ninth Circuit.

Jan. 18, 1963.

---

Koerner, Young, McColloch & Dezendorf, John Gordon Gearin and James H. Clarke, Portland, Or., for appellant.

Mautz, Souther, Spaulding, Kinsey & Williamson, Kenneth E. Roberts and James B. O'Hanlon, Portland, Or., for appellee.

Before HAMLEY, HAMLIN and MERRILL, Circuit Judges.

HAMLIN, Circuit Judge.

Upper Columbia River Towing Company (herein appellant) appeals from an adverse judgment of the United States District Court for the District of Oregon. The district court had jurisdiction by virtue of diversity of citizenship of the parties and the existence of the requisite jurisdictional amount. Jurisdiction is conferred upon this court under the provisions of 28 U.S.C. § 1291.

The questions raised on this appeal are in general (1) whether the district court erred in not finding as a matter of law that the accidents to be discussed hereafter were within the coverage of a comprehensive liability insurance policy issued by appellee to appellant; and (2) whether the district court erred in refusing to submit to the jury appellant's contentions that appellee negligently investigated the accidents and had waived its right to deny or was estopped from denying coverage under the policy.

The facts, which will be amplified during our discussion of the issues, are briefly as follows. On June 30, 1959, Charles Pugh was injured at the McKenna Dock in Coos Bay and on August 10, 1959, Gordon McIntosh was injured at the Pulp Mill Dock in Coos Bay. In each case, the injury occurred aboard Barge 537, which at the time of each injury was under bare boat charter to appellant.

On February 23, 1960, McIntosh filed an action in the Multnomah County Circuit Court against appellant for damages resulting from his injuries and on March 23, 1960, Pugh filed a similar action in the same court. The plaintiff in each action alleged that he was injured aboard Barge 537 and alleged unseaworthiness of the barge and negligence. Appellant forwarded these actions to Maryland Casualty Company, appellee herein, for defense under the provisions of a comprehensive liability insurance policy that had been issued by appellee to appellant. Appellee upon receiving the two actions referred them to its attorneys who in due course removed the actions to the United States District Court for the District of Oregon and filed answers therein.

On June 3, 1960, appellee denied coverage on the basis that Exclusion D of the policy was applicable and refused to further defend the actions. After some negotiations between appellant and appellee, appellant assumed the defense of the actions and impleaded appellee as a third party defendant. Prior to the trial of the actions, appellant settled with McIntosh for $11,500 and with Pugh for $9,460.97.

The action against appellee proceeded to a jury trial and resulted in a verdict in favor of appellee.

By the terms of Coverage A of the policy, appellee agreed, subject to the exclusions, conditions and other terms of the policy, to "pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury * * * sustained by any person and caused by accident." Exclusion D provided in pertinent part that the policy did not apply under Coverage A to the—

"* * * use, loading or unloading of (1) watercraft if the accident occurs away from premises owned by, rented to or controlled by the named insured * * *."

An endorsement to the policy, referring to Coverage A, provided for the substitution of the term "occurrence" for the word "accident" and defined the former to mean "an event, or continuous or repeated exposure to conditions, which unpectedly causes injury during the policy period." Finally, the declarations of the policy provided that the rating classifications under the description of hazards did not modify the exclusions or other terms of the policy and listed, *inter alia*, "Empire, Oregon" under the heading "Premises—Operations" in the description of hazards.

Both appellee and appellant requested directed verdicts on the issue of coverage. The district court denied the motions and submitted the question to the jury with the instruction that the burden was on appellee to prove by a preponderance of the evidence the applicability of Exclusion D. Appellant contends that the district court should have found as a matter of law that Exclusion D was inapplicable because:

(1) "Empire, Oregon" was listed under "Premises—Operations" in the description of hazards and McIntosh's injury occurred at the Pulp Mill Dock in Empire;

(2) There was no evidence that the "occurrence" in each case did not take

place at premises owned, rented by or controlled by appellant;

(3) Appellant was in control of the McKenna Dock at the time of Pugh's injury and of the Pulp Mill Dock at the time of McIntosh's injury as a matter of law.

These contentions shall be considered in the order listed.

The evidence reveals that appellant did own and operate docks at Holland and Mill Streets in Empire, Oregon. McIntosh's injury, however, occurred at the Pulp Mill Dock in Empire, which was neither owned nor rented by appellant. We believe that it is clear that the mere listing of "Empire, Oregon" in the description of hazards did not in any way modify or limit the applicability of Exclusion D. Therefore, in McIntosh's case, as well as in Pugh's, the question was whether the "occurrence" took place away from premises owned, rented, or controlled by appellant.

■ Appellant argues that by virtue of substituting "occurrence" for "accident," the place where the cause of the accident arose, and not the place of the accident, became controlling. Since both McIntosh and Pugh purportedly slipped on oil that had accumulated on the deck of Barge 537, appellant contends that the burden was on appellee to show that the oil accumulated on the deck away from premises owned, operated, or controlled by appellant. We do not agree with appellant's interpretation and hold that the term "occurrence," as used in the policy, relates to the event upon which the liability of the appellant was predicated.[1] The events in this case which gave rise to appellant's liability were the injuries sustained by Pugh and McIntosh when they fell on Barge 537. If these injuries occurred away from premises owned, rented or controlled by appellant, Exclusion D of the policy was applicable.

■ Appellant neither owned nor rented the McKenna and Pulp Mill Docks, but contends that the district court should have found as a matter of law that it had "control" of the McKenna Dock when Pugh was injured and of the Pulp Mill Dock when McIntosh was injured.

At the time of Pugh's injury, the McKenna Dock was owned and operated by the Coos Head Timber Company and at the time of McIntosh's injury the Pulp Mill Dock was under lease to the same company. In each case the injury occurred aboard Barge 537 while lumber which had been manufactured by the Coos Head Timber Company was being loaded aboard the barge for shipment. None of appellant's employees were present on the docks or on the barge at the time of either occurrence. Evidence was introduced to show, however, that McIntosh, who was on the payroll of River Terminals Company, was in charge of each operation and that his immediate superior was appellant's general superintendent. Other evidence presented by appellant on this issue similarly was directed at showing that appellant had control of the loading operations. Mr. Smith, president of the Coos Head Timber Company, testified that he did not believe that appellant had superintendence over either dock.

Exclusion D specifically covers the "loading and unloading" of watercraft. Had it been intended that control over such operations was to be determinative on the issue of applicability of the exclusion, it would have been easy to so provide. The applicability of the exclusion, however, clearly was made to depend upon whether or not the "premises" were controlled by appellant. Although evidence tending to show control over the loading operation may have been relevant to the determination as to whether appellant had control over the premises, such evidence was not conclusive on that issue. The evidence was not such in this case that fairminded men could not have

1. Cf., Remmer v. Glens Falls Indemnity Company, 140 Cal.App.2d 84, 295 P.2d 19, 57 A.L.R.2d 1379 (1956); Continental Casualty Co. v. Zurich Insurance Co., Cal.App., 14 Cal.Rptr. 508, 511 (1961).

drawn different inferences therefrom.[2] Therefore, the district court would not have been justified in holding that as a matter of law either dock was under the control of appellant. We hold that the court properly submitted the issue of control to the jury.

Appellant in its pleadings alleged that appellee negligently investigated the accidents, that appellant's defense of the actions was damaged, delayed, and prejudiced thereby, and that appellee had waived and was estopped to assert or rely on the applicability of Exclusion D. At the conclusion of the testimony, appellee moved for a directed verdict on these issues; the district court granted the motion. Appellant contends that these issues should have been submitted to the jury. We hold that the district court did not err in granting appellee's motion.

After Pugh and McIntosh had been injured, reports were made to the deputy commissioner pursuant to the provisions of the Longshoremen's and Harbor Workers' Act,[3] listing appellant as the employer of both men. These forms were forwarded to appellee, since appellee had previously issued a policy of insurance to appellant providing coverage under that Act.[4] Appellee employed independent adjusters to investigate the two claims and thereafter commenced paying compensation and furnishing other benefits under the Act to Pugh and McIntosh. McIntosh and Pugh subsequently filed actions against appellant in which they alleged that they were employees of River Termi-

nals Company, an affiliate of appellant. The actions were forwarded by appellant to appellee, coverage being claimed under a separate comprehensive liability policy issued by appellee to appellant. As noted earlier, appellee upon receiving the actions, referred them to its attorneys who in due course removed them to the district court and filed answers therein. In addition, appellee secured depositions of each plaintiff and obtained independent medical examinations. Except with respect to the question of coverage, the extent of the investigation made by appellee was as indicated above. When appellee denied coverage on June 3, 1960, and refused to further defend the actions, it delivered to counsel for the appellant the pleadings, medical reports, depositions in each case, and advised appellant that there was additional medical information in the compensation file. As previously noted, appellant settled both actions prior to trial.

There is no evidence to indicate that appellee waived its right to deny coverage. "Waiver refers to the voluntary or intentional relinquishment of a known right."[5] As soon as appellee determined that there was no coverage under the policy, it denied the same.

We also hold that there was not sufficient evidence on the issue of estoppel to submit to the jury. Estoppel has been defined as "any conduct, express or implied, which reasonably misleads another to his prejudice so that a repudiation of such conduct would be unjust in

2. See e.g., Gunning v. Cooley, 281 U.S. 90, 94, 50 S.Ct. 231, 74 L.Ed. 720 (1930); Tiller v. Atlantic Coast Line R. Co., 318 U.S. 54, 68, 66 S.Ct. 444, 87 L.Ed. 610 (1943). See also Moore's Federal Practice. Vol. 5, Par. 50.02[1].

3. 33 U.S.C. § 901, et seq.

4. Appellant argued that appellee should have assumed at this time that there would be later liability suits and therefore should have commenced its investigation at once. The district court concluded that appellant had confused matters by listing itself as the employer of Pugh and McIntosh when in fact both men were employed by River Terminals Company and that consequently appellee had no duty to investigate until the liability claims were filed and brought to its attention. Had Pugh and McIntosh in fact been employees of appellant, benefits under the Longshoremen's and Harbor Workers' Act would have been their exclusive remedy against appellant. (33 U.S.C. § 905).

5. Matsuo Yoshida v. Liberty Mutual Insurance Co., 240 F.2d 824, 829 (9th Cir., 1957).

Content:

**707**

the eyes of the law." [6] Although appellee was obligated under the terms of the policy to initially assume the defense, it had the right, if its conduct had not prejudiced appellant, to withdraw from the defense upon determining that there was no coverage under the policy.[7]

Appellant contends that appellee's delay in denying coverage did prejudice it in its ability to investigate the accidents. In this regard, an investigator employed by appellant in October, 1960, (over four months after appellee had denied coverage) reported that at "that advanced stage of the litigation it was impossible to obtain certain particular information which, perhaps, would have aided" in defending the actions. However, in his written report, the investigator stated, "It appears that both plaintiffs will have no difficulty to prove the existence of slippery substance on the deck at the time the alleged injuries occurred." At the trial the investigator testified as follows:

"Q. Both of these men claimed to have slipped on the vessel on some greasy substance?

"A. That is right.

"Q. Didn't you conclude as a result of your investigation that they would have no difficulty in proving that?

\* \* \* \* \* \*

"Q. That they would have no difficulty in showing that the vessel had grease on it and she was unseaworthy?

"A. That is right.

\* \* \* \* \* \*

"Q. Mr. Poida, again, we are coming back to this: On the question of liability of the owner, all these witnesses you saw said, or at least you concluded the plaintiffs would have no difficulty in showing a slippery substance on the vessel; is that correct?

"A. That is right."

If the injured claimants could establish that the unseaworthiness of the barge was the cause of their respective injuries, liability would result. Information concerning the extent of the injuries suffered was contained in the appellee's compensation files and in the depositions of Pugh and McIntosh taken by appellee. All of this information was available to appellant.

Appellant has not pointed to any conduct of appellee which prevented it from presenting such defenses as it may have had to the claims of Pugh and McIntosh. Since there was insufficient evidence to support a finding of prejudice to appellant, we conclude that the district court did not err in refusing to submit the estoppel issue to the jury.

Lastly, we agree with the district court that the facts disclosed no evidence of negligence on the part of appellee in its investigation and handling of the actions. Further, again there was no evidence that appellant had in any way been damaged or prejudiced by the manner in which the actions had been handled.

We find nothing to justify the reversal of the judgment and accordingly the judgment is affirmed.

6. Id. at 829–830.

7. See e.g., Journal Pub. Co. v. General Casualty Co., 210 F.2d 202, 205 (9th Cir., 1954). See also Maryland Casualty Co. v. Pearson, 194 F.2d 284, 287 (2nd Cir., 1952) (dictum); Lee v. Aetna Casualty & Surety Co., 178 F.2d 750, 753 (2nd Cir., 1949) (dictum).