NATIONAL FARMERS UNION PROPERTY AND CASUALTY COMPANY, a Corporation, Plaintiff,

v.

Gary B. IVERSON and Glenn L. Iverson, Defendants.

No. Civ. 72–4041.

United States District Court, D. South Dakota, S. D.

Aug. 14, 1972.

---

John S. Theeler, of Morgan & Fuller, Mitchell, S. D., appeared in behalf of the plaintiff.

Charles A. Wolsky, Vermillion, S. D., and A. D. Sommervold, of Woods, Fuller, Shultz & Smith, Sioux Falls, S. D., appeared in behalf of the defendants.

## MEMORANDUM DECISION

NICHOL, District Judge.

The defendants, Glenn L. and Gary B. Iverson, do business as a partnership under the name of the Iverson Brothers. They are engaged in the farming business near Vermillion, South Dakota and grow, cut and bale alfalfa hay for sale. One Donald Punt purchased hay from the Iversons on October 15, 1969, November 15, 1969, and December 9, 1969, and the same was delivered to the Punt farm in Sioux County, Iowa, to be used as cattle feed. It is alleged that subsequently Punt's dairy cattle became afflicted with what is known as "hardware disease". The disease is the result of the cow's ingesting metal objects, most commonly small bits of wire. Because of this affliction the cattle have depreciated in value. As a result of this economic loss Mr. Punt has commenced a suit for damages in this court against the Iversons, individually, for a sum in excess of $28,000.

The plaintiff in the immediate suit, National Farmers Union Property and Casualty Company (National), is a Utah corporation having its principal place of business in Colorado. National, as insurer of the defendants, brings this action under 28 U.S.C.A. Secs. 2201 and 2202 for declaratory relief. The plaintiff agrees that at all times material herein it had issued to the defendant Iverson brothers, as individuals, a Farmer's Blanket Liability Policy. Specifically, policy #39–9746 effective from June 17, 1969, to June 17, 1970, was issued to Gary B. Iverson. And policy

#39–4709 effective from July 6, 1969, to July 6, 1970, was issued to Glenn L. Iverson. Neither party has sought any other legal relief or adjudication of their respective rights under said policies.

The issue presented is whether or not plaintiff, National, has a duty to defend and indemnify the Iversons, under their respective policies, in the litigation initiated by Donald Punt. The Iversons contend that coverage is afforded under the issued policies, while National prays for a declaratory determination that they are not contractually bound to defend or indemnify the policyholders under these facts and under their policies.

This court finds from its interpretation of the policy in question and from the allegations contained in Punt's complaint that:

(1) National is not under a duty to defend the Iversons in the suit initiated by Donald Punt; but

(2) National will be held responsible to the Iversons for any sum they may become obligated to pay up to the limits provided by Coverage E and its relevant Conditions.

■ Neither counsel for the parties nor this court discovered a case interpreting an identical policy or a case based on identical facts. Resort must then be made to general rules of contract construction. As a matter of law insurance contracts should be construed like any other contract, Bergholm v. Peoria Life Insurance Company, 284 U. S. 489, 52 S.Ct. 230, 76 L.Ed. 416 (1932), giving effect to the expressed intentions of the parties so far as that intention is legal. W. Vance, Handbook on the Law of Insurance 808 (3d ed. 1951).

The courts are fully agreed that if the contract is clear and is valid, they have no option but to enforce the contract which the parties have entered into. Stated another way, the function of the court is to construe and to enforce the contract which the parties have entered into and not to make a new contract for the parties. Vance at 809.

In Black Hills Kennel Club, Inc. v. Fireman's Fund Indemnity Co., 77 S.D. 503, 94 N.W.2d 90 (1959), this principle was applied when the South Dakota Supreme Court stated:

We are mindful of the rule of construction that where the provisions of an insurance contract are not clear and are fairly susceptible of different interpretations that one most favorable to the insured should be adopted. (Cases cited). This rule does not mean, however, that the court may seek out a strained or unusual meaning for the benefit of the insured. (Case cited). Insurers may assume some risks and exempt themselves from liability for others. 77 S.D. at 506–507, 94 N.W.2d at 92.

### I.

Our factual situation finds possible coverage under two provisions of the insurance contracts purchased by the Iversons. For the following reasons it does not fall within the first of such provisions, Coverage A.

Coverage A and its relevant Exclusion state:

Coverage A—Farm and Personal Liability: To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage.

### EXCLUSIONS

This policy does not apply:

(h) under Coverage A, to any occurrence arising out of the handling or use of, the existence of any condition in, or a warranty of, goods or products manufactured, produced, grown, sold, handled or distributed by the insured if the occurrence arises after the insured has relinquished possession thereof to others and away from premises owned, rented or controlled by the insured.

Exclusion (h) is, as counsel for the plaintiff submits, a products liability exclusion. This exclusion carves out of the broad proclamation of coverage, provided in Coverage A, liability incurring events surrounding an insured's " . . . goods . . . produced, grown, sold, . . . by the insured if the occurrence arises after the insured has relinquished possession thereof to others and away from premises owned . . . by the insured". This language in clear and unambiguous terms excludes the risks or the events surrounding a policyholder's possible products liability. It does not, as defendants contend, have reference to coverage of damages sustained by the products themselves.

Defendants contend that it is the alleged negligence of the Iversons in bailing small bits of wire into the hay that has given rise to liability, not the subsequent occurrence of "hardware disease" away from their premises and in Donald Punt's cattle. In support of this contention defendants further submit that as between multiple-cause losses, one cause being insured and one not being insured, that the direct sustained loss will be attributed to the insured cause thus providing coverage. Defendants' contentions are not persuasive because of the broad definition of the policy term "occurrence"; because of case decisions interpreting similar language in product liability exclusions contrary to defendants' interpretation; and because the defendants have misapprehended the multiple-cause loss theory.

The defendants' acknowledged authority points out in his cited work, R. Keeton, Insurance Law-Basic Text 319 (1971):

> Subject to overriding regulatory measures, explicit policy provisions regarding multiple-cause cases are ordinarily enforceable as written and may provide either for broader or for narrower coverage than would result in the absence of contractual specification. Thus, for example, the rules of insurance law applicable to what Patterson calls excluded events are quite unlike the rules of proximate cause applied in torts cases and in other insurance cases, *since these rules of insurance law deny recovery for losses arising from multiple causes some of which could have been affirmative bases for coverage but for the exclusionary provision.* (emphasis added).

This court interprets the explicit language of Exclusion (h) as narrowing the scope of the risks assumed and denying application of Coverage A.

The extensiveness of Exclusion (h) can only be appreciated by interpreting the term "occurrence" in relation to the term "accident". The definition of "occurrence" embodies a more encompassing meaning and has been held to include the term "accident" which insurance policies normally use. Aerial Agriculture Service of Montana, Inc. v. Till, 207 F. Supp. 50 (N.D.Miss.1962). The significance of the scope of the term "occurrence" is further illustrated in the case of Upper Columbia River Towing Co. v. Maryland Casualty Co., 313 F.2d 702 (9th Cir. 1963), where the court held contrary to an argument similar to the defendants' contention here. In that case the court held "that the term 'occurrence', as used in the policy, relates to the event upon which the liability of the appellant was predicated". 313 F.2d at 705. Liability was established at the place where the injury occurred, not where the cause of action arose. See Annot., 57 A.L.R.2d 1379 (1958).

This court is in accord with the reasoning of the courts which have held that "(i)t is the occurrence of the accident itself and not of its negligent cause which is expressly made the determining circumstance." Bitts v. General Accident Fire and Life Assurance Corporation, 282 F.2d 542, 544 (9th Cir. 1960). In most cases where damages or injuries are caused by the handling or use of a product, or by a defective condition in such product, the occurrence can be traced to some pre-existing negligence.

But to give controlling effect to the allegation of pre-existing negligence in determining at what point liability arose would be to "emasculate" the product liability exclusion. Tidewater Associated Oil Company v. Northwest Casualty Company, 264 F.2d 879, 882 (9th Cir. 1959). See also, Central Bearings Co. v. Wolverine Insurance Company, 179 N. W.2d 443 (Iowa 1970). Though the two South Dakota cases entitled Dakota Block Co. v. Western Casualty and Surety Co., 81 S.D. 213, 132 N.W.2d 826 (1965), and 82 S.D. 546, 150 N.W.2d 729 (1967), are neither in direct point factually nor as to identical policy provisions, they nevertheless do stand for the proposition that in interpreting a product liability exclusion, the court will treat the occurrence immediately preceding the injury giving rise to liability as controlling insofar as coverage is concerned. The case of St. Paul Fire and Marine Insurance Co. v. Northern Grain Co., 365 F.2d 361 (8th Cir. 1961), can be viewed as a holding similar to *Dakota Block.*

■ For the preceding reasons Exclusion (h) is a products liability exclusion, not uncommonly found in liability insurance policies. See Annot., 54 A.L. R.2d 518 (1957); 44 Am.Jur. *Insurance* Sec. 1431 (1969). Not having contracted for product liability coverage, the court finds the coverage under provision A inapplicable in these circumstances.

Because coverage has not been found under Coverage A, and because Coverage C (a) is inappropriate in our circumstances, the plaintiff, National, is free of any obligation to defend the Iversons in the litigation by Donald Punt. The policy provisions concerning the duty to defend are:

As respects the insurance afforded by the other terms of this policy under Coverages A and C (a), the company shall:

(A) defend any suit against the insured alleging such injury or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the company may make such investigation, negotiation and settlement of any claim or suit it deems expedient;

These two provisions, A and C(a), by the clear terms of the insurance contract, provide the only instances when National is obligated to defend.

## II.

The second provision possibly establishing coverage is Coverage E. The language of that section and its respective exclusion states:

Coverage E—Physical Damage to Property: To pay for loss of property of others caused by an Insured or arising out of his farming operations. "Loss" means damage to or destruction of such property, but does not include disappearance, abstraction or loss of use.

Exclusions—This policy does not apply: (p) under Coverage E to loss

(1) arising out of the ownership, maintenance, operation, use, loading or unloading of any automobile, aircraft or watercraft; or

(2) of property owned by or rented to any insured, any resident of the named insured's household or any tenant of the insured; or

(e) caused intentionally by an insured over the age of twelve years; except that parts (1) and (2) of this exclusion shall not apply to damage to farm machinery borrowed by an insured and in the care, custody or control of an insured;

■■ The "loss of property of others caused by an insured or arising out of his farming operation" fits our facts perfectly. By the alleged negligent actions of the Iversons a loss has been sustained to the property of others, i. e., the cattle of Donald Punt. None of the Exclusions are applicable. Contrary to National's contention, the phrase "care, custody or control of an insured" only describes the phrase "damage to farm machinery borrowed by an insured" and is not to be read in combination with

Coverage A provisions. Each Coverage provision, along with its respective Exclusions, must be read as being separate and distinct. It is incumbent upon the policy draftsman to make his provisions clear enough so that a reasonable purchaser can understand its intentions. Central Bearings Co. v. Wolverine Insurance Company, 179 N.W.2d 443, 448 (Iowa 1970). The intent of the separate provisions is sufficiently clear. Thus, subject to Coverage E's applicable Conditions, National is obligated to indemnify the Iversons insofar as Coverage E provisions apply.

## III.

Under state law this court finds that each party must stand its own costs and disbursements. S.D.C.L. 21–24–10 (1967).

This memorandum decision shall constitute the findings of fact and conclusions of law of this court as directed by Rule 52 of the Federal Rules of Civil Procedure.