ST. PAUL FIRE AND MARINE INSUR-
ANCE COMPANY, a foreign
corporation, Plaintiff,

v.

THREE "D" SALES, INC., a corporation;
Leon F. Dubourt and C. Maurice Dunni-
gan, d/b/a Arctic Farms Company; and
Jack Alderson & Robert Alderson, d/b/a
Perfection Produce, Defendants.

Civ. No. A2–79–110.

United States District Court,
D. North Dakota,
Northeastern Division.

July 16, 1981.

**306**

Patrick J. Maddock, Degnan, McElroy, Lamb, Camrud, Maddock & Olson, Ltd., Grand Forks, N. D., for plaintiff.

Patrick W. Fisher, Shaft, McConn, Fisher & Thune, Ltd., Grand Forks, N. D., for Three "D" Sales, Inc., Leon F. Dubourt, C. Maurice Dunningan, d/b/a Arctic Farms.

Richard A. Clapp, Letnes, Marshall & Fiedler, Ltd., Grand Forks, N. D., for Jack Alderson & Robert Alderson, d/b/a Perfection Produce.

## MEMORANDUM AND ORDER

BENSON, Chief Judge.

Plaintiff in this diversity action seeks a judgment pursuant to 28 U.S.C. § 2201 declaring that under the provisions of insurance policies issued by it to defendants Three "D" Sales, Inc. (hereinafter referred to as Three "D" Sales), and Leon F. Dubourt and C. Maurice Dunnigan, d/b/a Arctic Farms Company (hereinafter referred to as Arctic Farms), plaintiff had no duty to defend or indemnify said defendants in a negligence suit brought against them by Jack Alderson and Robert Alderson, d/b/a Perfection Produce (hereinafter referred to as Perfection Produce). Defendants Three "D" Sales and Arctic Farms successfully defended the civil suit. As a result, Perfection Produce has indicated that it was not taking any further action in this declaratory judgment suit. Three "D" Sales and Arctic Farms have both filed a counterclaim seeking damages for their expenses in defending the negligence action. The case has been bifurcated and the only issue before the court at this time is whether, under the policies of insurance issued to Three "D" Sales and Arctic Farms, plaintiff had a duty to defend against and supply coverage for the claims made by Perfection Produce in its complaint. The matter has been presented to the court on a stipulation of facts.

On or about April 30, 1977, plaintiff issued a comprehensive general liability insurance policy, No. 582JF8067, to defendant Three "D" Sales, a potato storage and brokerage business, providing personal property liability coverage in the amount of $100,000 for each occurrence. On or about the same date, plaintiff issued a similar comprehensive policy, No. 582JF8198, to defendant Arctic Farms, a potato farming business, in the amount of $50,000 for each occurrence. The insurance policies issued to defendants, under the heading, "COMPREHENSIVE GENERAL LIABILITY INSURANCE COVERAGE FORM—BROAD," provide in part as follows:

1. COVERAGE A—BODILY INJURY LIABILITY

COVERAGE B—PROPERTY DAMAGE

The company will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of:

Coverage A. bodily injury or

Coverage B. property damage

to which this insurance applies, caused by an occurrence, and the Company shall have the right and duty to defend any suit against the Insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent....

The policies also carry an endorsement entitled "COMPLETED OPERATIONS HAZARD AND PRODUCTS HAZARD EXCLUSION ENDORSEMENT," which stated that the "endorsement modifies such insurance as is afforded by the provisions of the policy relating to COMPREHENSIVE GENERAL LIABILITY INSURANCE...." It provides in part as follows: "It is agreed that such insurance as is afforded by the Bodily Injury Liability Coverage and the Property Damage Liability Coverage does not apply to liability injury or property damage included within the Completed Operations Hazard or the Products Hazard."

The following definition of "Products Hazard" is contained in the policy.

"[P]roducts hazard" includes bodily injury and property damage arising out of the Named Insured's products or reliance upon a representation or warranty made at any time with respect thereto, but only if the bodily injury or property damage occurs away from the premises owned by or rented to the Named Insured and after physical possession of such products have been relinquished to others.

In addition to this comprehensive general liability insurance, Arctic Farms had a Farm and Ranch Liability Insurance Form attached to and made part of the main policy, providing $300,000 personal liability coverage for each occurrence.

In March, 1976, Perfection Produce agreed to purchase potato seed from Three "D" Sales and others for delivery in early 1977. The seed provided by Three "D" Sales was grown in part by Arctic Farms. In December, 1977, Perfection Produce commenced an action in state court in Washington against Three "D" Sales, Arctic Farms, and others. The complaint charged that plaintiffs' 1977 potato crop was infected by disease; that the defendants were negligent in the preparation, certification and distribution of the potato seed; and that the defendants expressly and impliedly warranted the potato seed to be free from any and all defects. Damages of $750,000 were prayed for.

■ An insurer's obligation to defend and an insurer's obligation to indemnify are separate and distinct contractual elements. *Smith v. American Family Mut. Ins. Co.*, 294 N.W.2d 751, 759 (N.D.1980). Yet the obligation to defend can be defined only by reference to the indemnity coverage. An insurer is under an obligation to defend only if it would be held bound to indemnify the insured in case the injured person prevailed upon the allegations in his complaint. *Kyllo v. Northland Chemical Co.*, 209 N.W.2d 629, 634 (N.D.1973). If there is any doubt whether the facts alleged in the complaint are sufficient to bring the injury within the coverage of the policy, the doubt should be resolved in favor of the insured and the insurer should be deemed to have the obligation to defend. *Id.*

Here the allegations in the complaint are that Perfection Produce purchased potato seed from the insureds and that due to the insureds' negligence in the preparation, certification, and distribution of the seed, Perfection Produce's crop was diseased.

■ As previously stated, the comprehensive general liability policies issued to defendants provide that there is no property damage indemnity coverage for anything defined as a products hazard. A products hazard is clearly defined as any property damage arising out of the insured's products if the property damage occurs away

from the premises owned by or rented to the insured and after physical possession of such products have been relinquished to others. The claim alleged in the complaint against the insureds is a clear example of a products hazard as that term is defined in the policy. The complaint alleges that Perfection Produce sustained property damage to their crop arising out of the insureds' potato seed. The crop damage occurred away from the premises owned by or rented to the insureds and after the seed had been relinquished to Perfection Produce. It is likewise equally clear from the provision that any property damage arising from the insureds' warranties concerning the seed, as alleged in the complaint against the insureds, is also excluded from coverage.

■ Although a fair reading of the complaint would indicate that the acts of negligence in preparing, certifying, and distributing the seed are alleged to have occurred on the insureds' premises, such a factor is not controlling. It has generally been held in construing a products hazard clause that it is the place of the occurrence of the property damage, and not the place of the negligent acts causing the damage, which is controlling. *See e. g., Hagen Supply Corp. v. Iowa National Mutual Insurance Co.*, 331 F.2d 199, 202–03 (8th Cir. 1964); *National Farmers Union Property Cas. Co. v. Iverson*, 346 F.Supp. 660, 662–63 (D.S.D.1972); *Steinheider & Sons v. Iowa Kemper Ins.*, 204 Neb. 156, 281 N.W.2d 539, 543 (1979). The plain language in the products hazard exclusion of the instant policy can lend itself to no other interpretation. Defendants' reliance on *Brant v. Citizens Mutual Automobile Insurance Co.*, 4 Mich.App. 596, 145 N.W.2d 410 (1966), is misplaced. In *Brant*, a civil action had been commenced against the insured for selling the complainant the wrong type of space heater. A products hazard clause excluded coverage for *accidents* connected with products occurring off the premises. The court held that an accident occurred on the premises when the wrong heater was supplied, even though the damage occurred elsewhere, so that the exclusion was inapplicable. The Michigan court has since had an opportunity to address a products hazard clause similar to the one in the instant case, referring only to *damages* occurring off the premises, and found that the location of the damage was the controlling factor. *Tiano v. Aetna Cas. and Sur. Co.*, 102 Mich.App. 177, 301 N.W.2d 476, 480 (1980).

Defendants attempt to draw a distinction between acts of omission, and acts of malfeasance, suggesting that a cause of action based on a failure to inspect the seed potatoes is not clearly excluded by the products hazard provision. The argument is specious. The products hazard clause makes no distinction between acts of omission and malfeasance. It clearly excludes damage arising out of the insureds' products, whatever the cause of action.

■ Defendants further argue that the policy must be construed most strongly against the insurance company. *See Hughes v. State Farm Mut. Auto. Ins. Co.*, 236 N.W.2d 870, 885 (N.D.1975). However, if there is no ambiguity in the policy, there is no room for construction. *Bosch v. Garcia*, 286 N.W.2d 26, 28 (Iowa 1979); *Dairyland Ins. Co. v. Implement Dealers Ins. Co.*, 294 Minn. 236, 199 N.W.2d 806, 811 (1972). The comprehensive general liability policies and the products hazard exclusion contained therein are clear and unambiguous. The policies did not provide coverage for the property damage claimed in Perfection Produce's complaint. Therefore, under the comprehensive general liability policies, plaintiff had no duty to defend Three "D" Sales or Arctic Farms in the action against them.

For Arctic Farms, however, the inquiry does not end here. In addition to the comprehensive general liability protection, Arctic Farm's policy contains a schedule entitled FARM AND RANCH LIABILITY INSURANCE COVERAGE FORM, which provides in relevant part as follows:

1. COVERAGE A—PERSONAL LIABILITY

The Company will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as dam-

ages because of injury or property damage to which this insurance applies, caused by an occurrence, and the Company shall have the right and duty to defend any suit against the Insured seeking damages on account of such injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent. . . .

*Exclusions*

This coverage does not apply:

(a) to injury or property damage arising out of (1) business pursuits of any Insured except (i) activities therein which are ordinarily incident to non-business pursuits and (ii) farming, or (2) the rendering of or failing to render professional services . . . . ;

. . . .

(h) to property damage to products manufactured, sold, handled or distributed by any Insured or work performed by or for any Insured arising out of such products or work or any part thereof . . . .

Plaintiff concedes that the previously referred to products hazard exclusion contained in the policy is by its own terms applicable only to the COMPREHENSIVE GENERAL LIABILITY COVERAGE FORM and not to the FARM AND RANCH LIABILITY INSURANCE COVERAGE FORM.

█ Plaintiff does not appear to dispute that the general coverage provisions of the Ranch and Farm Liability Insurance schedule, providing coverage for damage to personal property caused by an occurrence, would cover the risk alleged in Perfection Produce's complaint, i. e., damage to a potato crop as a result of the defective potato seed. Rather, plaintiff's contention is that one or more of the above exclusions are applicable. An insurer has the burden to prove the applicability of a policy exclusion. *Lovas v. St. Paul Ins. Companies*, 240 N.W.2d 53, 62 (N.D.1976).

█ It is first suggested that when Arctic Farms prepared and sold its potato seed it was engaged in a business pursuit other than farming. The term "farming" is defined in the policy as including "the operation of roadside stands maintained principally for the sale of the Insured's farm products." Plaintiff rests its argument on the fact that the complaint against the insured did not allege that Arctic Farms negligently grew the seed potatoes, but rather alleged that it was negligent in preparing, certifying, and distributing the seed. It is contended the latter is not farming activity. Plaintiff cites no cases in support of its argument that "farming" should be restrictively construed so as to not include the preparing and selling of farm products by the grower. When Arctic Farms took out the policy, it listed its business as potato farming. The North Dakota Supreme Court has held that it is reasonable for a buyer to expect that when he buys and pays for "farm liability" insurance it will cover liability arising out of his normal farming operation, unless excluded operations are called to his attention. *Mills v. Agrichemical Aviation, Inc.*, 250 N.W.2d 663, 668 (N.D.1977). Plaintiff has failed to show that preparing and selling potato seed was not part of Arctic Farms' normal farming operation. *See National Farmers Union Property & Cas. Co. v. Iverson, supra* at 664 (court holding farmer selling hay bales contaminated with small pieces of wire was engaged in "farming operation" so as to be provided insurance coverage for claim against it arising from such defect).

Plaintiff had control over the language of the policy. It could have more clearly defined the term "farming" so as to exclude farm products hazard coverage if that was its intent.

[A]ny ambiguity or reasonable doubt as to the meaning of a policy is to be construed strictly against the insurer and in favor of the insured, and if language in a policy will support an interpretation which will impose liability on the insurer and one which will not, the former interpretation will be adopted.

*Mills v. Agrichemical Aviation, Inc., supra* at 670. In so construing the provision, the court holds that Arctic Farms was engaged

in farming within the meaning of the policy when it prepared and sold the seed potato involved in the lawsuit.

Furthermore, the court is not persuaded by plaintiff's contention that Arctic Farms' preparation and sale of the seed was the rendering of or failing to render professional services so as to fall within the exclusion. The term "professional services" is not defined in the policy. Therefore the court must give it its usual and ordinary meaning.

> Something more than an act flowing from mere employment or vocation is essential. The act or service must be such as exacts the use or application of special learning or attainments of some kind. The term "professional" in the context used in the policy provision means something more than mere proficiency in the performance of a task and implies intellectual skill as contrasted with that used in an occupation for production or sale of commodities. A "professional" act or service is one arising out of a vocation, calling, occupation, or employment involving specialized knowledge, labor, or skill, and the labor or skill involved is predominantly mental or intellectual, rather than physical or manual.

*Marx v. Hartford Accident and Indemnity Company*, 183 Neb. 12, 157 N.W.2d 870, 871–72 (1968). *See Gulf Insurance Company v. Tilley*, 280 F.Supp. 60, 63 (N.D.Ind. 1967). *Cf. Horn v. Burns and Roe*, 536 F.2d 251, 255 (8th Cir. 1976). It is unlikely that a farmer preparing and selling his farm products would be deemed to fall within that category. Assuming *arguendo* that he would, the instant exclusion cannot be so interpreted. Arctic Farms purchased farm liability coverage. The exclusion exempts farming. The court has held that preparing and selling farm products is an incident of farming. If the court accepted plaintiff's definition of "professional services," the exclusion would both exempt farming and include farming. Such an inconsistency cannot be read into the exclusion provision. The reasonable interpretation of the term "professional services" in the context of this policy, is that it does not include farming

activity. Therefore, the exclusion is inapplicable.

Also excluded from coverage is property damage to products sold by the insured. There can be little argument, that on its face, this exclusion is also not applicable. A similar exclusion was interpreted in *St. Paul Fire and Marine Insurance Co. v. Northern Grain Co.*, 365 F.2d 361 (8th Cir. 1966). There, the insured had been sued for providing the wrong kind of wheat seed, resulting in damages because of a less productive crop. As recognized by the court, the damage was to the wheat crop, not the seed. It rejected the argument that the crop was merely a changed form of the seed. The court went on to state the following:

> Considered in its proper perspective, the function of the exclusionary clause denying coverage of damages for "injury to or destruction of * * * any goods, products or containers thereof manufactured, sold, handled or distributed by the *Insured* * * *" is clear. Such a provision denies coverage to an insured for damages occasioned to his own goods or work product by reason of its internal defectiveness. The exclusionary clause, however, has no reference to damage to property other than the insured's goods or products or other accidental loss resulting from the defective condition of the insured's work product.

*Id.* at 368.

Plaintiff, however, argues that in *Northern Grain*, the insured had purchased products hazard coverage, where in the instant case no such coverage was explicitly purchased. This argument begs the question of whether Arctic Farms needed to purchase such additional coverage in order to be covered for such a risk under the Farm and Ranch Form. The court has already held that products hazard coverage was explicitly excluded in the Comprehensive General Liability Coverage Form. However, that exclusion cannot be carried over to the Farm and Ranch Form. Each coverage provision of a policy, along with

its respective exclusions, must be read as being separate and distinct. *National Farmers Union Property & Cas. Co. v. Iverson, supra* at 665. Therefore, in determining what is excluded from the Farm and Ranch Coverage, one looks to the exclusions applicable to it. The court has done so, and there is no applicable provision which excludes products hazard coverage for the type of damage alleged in Perfection Produce's complaint.

▮▮▮ Plaintiff asserts that it is fair to assume that a premium for products hazard coverage for a 5000 acre potato business would have been more than the $71.00 that was charged for the Farm and Ranch Coverage. The court will not make that assumption. An insured often finds it difficult to determine coverage by reading the policy language. The court will not place on the policyholder the additional burden of attempting to ascertain the scope of coverage by the amount of premiums paid or by the reasonableness of "the deal." If an insurer is going to exclude risks from coverage, it must state the exclusions in words that will clearly inform the policyholder of the extent of the coverage. If the court was applying the Doctrine of Reasonable Expectations to grant rights to an insured at variance with the policy provisions, *see e. g., Mills v. Agrichemical Aviation, Inc., supra*; R. Keeton, Basic Text on Insurance Law, 341 (1971), then the insured's reasonable expectation of noncoverage may be relevant. Here, however, the court has looked solely to the policy language and finds no applicable exclusion. A court is without license to ignore the language of a policy providing coverage and deny coverage on the ground that for other reasons, the insured had no reasonable expectation of coverage.[1]

The court holds that pursuant to the provisions contained in the Farm and Ranch Liability Coverage Form and under the facts of this case, plaintiff had the duty to defend the negligence lawsuit brought against Leon F. Dubourt and C. Maurice Dunnigan, d/b/a Arctic Farms Company by Jack Alderson and Robert Alderson d/b/a Perfection Produce.

IT IS ORDERED that judgment be entered declaring that under Policy # 582JF8067, plaintiff did not provide liability coverage to Three "D" Sales, Inc., and had no duty to defend the negligence lawsuit brought by Jack Alderson and Robert Alderson, d/b/a Perfection Produce.

IT IS FURTHER ORDERED that judgment be entered declaring that under the Farm and Ranch Liability Coverage Form attached to and made a part of Policy # 582JF8198, plaintiff had a duty to defend Leon F. Dubourt and C. Maurice Dunnigan, d/b/a Arctic Farms Company on the negligence lawsuit brought against them by Jack Alderson and Robert Alderson, d/b/a Perfection Produce.

IT IS FURTHER ORDERED that the remaining issues of timely notice of claim, prejudice, waiver, and cost of defense will be tried to the court on Thursday, August 27, 1981 at 9:00 AM in the courtroom of this court at Grand Forks, North Dakota.

---

1. Plaintiff has made reference in its briefs that one of the principals of Arctic Farms was knowledgeable in insurance matters. This fact was not included in the stipulation and is not otherwise supported by anything of evidentiary stature, but assuming it to be a fact it would be immaterial for the reasons stated.