FRED STEINHEIDER AND SONS, INC., A CORPORATION, APPELLANT, v. IOWA KEMPER INSURANCE COMPANY, A CORPORATION, ET AL., APPELLEES.

281 N. W. 2d 539

Filed July 24, 1979. No. 42213.

Blevens, Blevens, & Jacobs, for appellant.

Baylor, Evnen, Baylor, Curtiss & Grimit, for appellees.

Heard before KRIVOSHA, C. J., McCOWN, and WHITE, JJ., and RONIN and HAMILTON, District Judges.

KRIVOSHA, C. J.

This appeal seeks to reverse an order of the District Court for Seward County, Nebraska, sustaining the appellee's (Iowa Kemper) motion for a directed verdict and dismissing appellant's (Steinheider) petition for a declaration of its rights under an insurance policy issued by Iowa Kemper to Steinheider. From an examination of all of the matters involved in this action, we believe the trial court acted correctly and therefore affirm the judgment of the trial court.

The facts which give rise to the present controversy are essentially without dispute. Steinheider was engaged in a seed and farm supply business and in connection therewith purchased from Iowa Kemper a comprehensive general liability insurance policy. The policy provided, in part: "The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of A. bodily injury or B. property damage to which this insurance applies, caused by an occurrence * * *."

The policy further contained, among other definitions, a specific definition for "completed operations hazard" and for "products hazard." "Completed operations hazard" is defined to include "bodily injury and property damage arising out of operations or reliance upon a representation or warranty made at any time with respect thereto, but only if the bodily injury or property damage occurs after such operations have been completed or abandoned and

occurs away from premises owned by or rented to the named insured. * * * Operations shall be deemed completed at the earliest of the following times: (1) when all operations to be performed by or on behalf of the named insured under the contract have been completed, (2) when all operations to be performed by or on behalf of the named insured at the site of the operations have been completed, or (3) when the portion of the work out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.''

''Products hazard'' is defined as ''bodily injury and property damage arising out of the named insured's products or reliance upon a representation or warranty made at any time with respect thereto, but only if the bodily injury or property damage occurs away from premises owned by or rented to the named insured and after physical possession of such products has been relinquished to others;''

The policy further contained a specific endorsement page entitled ''EXCLUSION (Completed Operations Hazard and Products Hazard)'' and recited: ''This endorsement *modifies* such insurance as is afforded by the provisions of the policy relating to the following: COMPREHENSIVE GENERAL LIABILITY INSURANCE * * *. It is agreed that such insurance as is afforded by the Bodily Injury Liability Coverage and the Property Damage Liability Coverage *does not apply* to bodily injury or property damage included within the Completed Operations Hazard or the Products Hazard.'' (Emphasis supplied.) In other words, the policy specifically provided, by endorsement, that any coverage for bodily injury or property damage occasioned by reason of acts within the definition of ''completed operations hazard'' or ''products haz-

ard" was excluded and not provided.

On April 30, 1975, a customer of Steinheider placed an order with it for a product known as "Teat-Dip" to be used as a mastitis preventative on dairy cattle. Due to the apparent negligence of an employee of Steinheider, a different chemical, "Wayne-O-Dyne," packaged similarly to "Teat-Dip," was mistakenly delivered to the customer. The chemical was used by the customer in his dairy operation. After approximately 10 days of use, the customer reported that he was running into trouble with his cows. The cows were experiencing sore udders, sore teats, and the customer, himself, was experiencing problems with the skin on his hands from using the product delivered.

The record indicates that "Teat-Dip" is a chemical used on the teats of the cows after milking as a disinfectant to reduce the incidence of mastitis, and is not as stringent as "Wayne-O-Dyne." "Wayne-O-Dyne" is a very strong disinfectant which is used for sterilizing hog barns and is supposed to be effective in killing any residue that might cause problems with hogs or dairy barn floors. The containers of both products are equal in size, color, and material, and both contain a disinfectant chemical known as taimodine.

The evidence reflects that on July 14, 1975, Steinheider's counsel wrote to Steinheider concerning the claim made by the customer against Steinheider. The letter indicated Steinheider had been advised by Iowa Kemper that coverage was being denied. The letter recites, in part: "We understand the company has suggested the Completed Operations Hazard and Products Hazard exclusion affixed to your policy would exculpate it from liability * * *." On August 7, 1975, a letter from Iowa Kemper to Steinheider's counsel indicated "there was no products liability or completed operations coverage" at that time, and further made specific reference to en-

dorsement L-9141 and set out in detail that coverage was denied because it did not apply to " 'bodily injury or property damage included within the completed operations hazard or the products hazard.' "

Steinheider filed a petition for declaratory judgment praying that it be declared and determined the liability insurance coverage provided by Steinheider's policy did not exclude the negligence of an employee in misdelivering a product. Attached to the petition was the letter of August 7, 1975, from Iowa Kemper to Steinheider's counsel, wherein coverage was denied because of the absence of a products liability or completed operations coverage. Iowa Kemper filed a general denial and trial was had on the matter before the court on December 9, 1977, and January 6, 1978. On January 6, 1978, following the taking of evidence in this matter on December 9, 1977, but before a decision was issued by the trial court, Iowa Kemper sought leave to file an amended answer, affirmatively pleading the exclusions contained in the endorsement referred to in its letter of August 7, 1975. After argument, the trial court granted leave to file the amended answer.

Steinheider maintains the trial court erred in two major respects: (1) In finding that the alleged negligent delivery of the wrong product to Steinheider's customer was either within the completed operations hazard or the products hazard, thereby excluding coverage under the policy by reason of the endorsement; and (2) in permitting Iowa Kemper to amend its answer after trial to affirmatively plead the exclusions of the policy.

It appears to us the language of the policy and the endorsement containing the exclusion are clear and unambiguous and in no manner contrary to public policy. As we noted in the case of Kansas-Nebraska Nat. Gas Co., Inc. v. Hawkeye-Security Ins. Co., 195 Neb. 658, 240 N. W. 2d 28: "It can be clearly seen that the insurance policy in this case plainly speci-

fied that completed operations coverage was not purchased. There is no ambiguity in the language of the policy and 'insurance companies have the same right as individuals to limit their liability.' " See Lonsdale v. Union Ins. Co., 167 Neb. 56, 91 N. W. 2d 245.

Likewise, in construing a contract, the instrument must be read as a whole, giving force and effect to all its provisions to determine whether or not any ambiguity exists and whether, if such ambiguity does exist, the contract is confusing and uncertain in its terms. Wyatt v. Woodmen Acc. & Life Co., 194 Neb. 614, 234 N. W. 2d 217; Kent v. Dairyland Mut. Ins. Co., 177 Neb. 709, 131 N. W. 2d 146. We are unable to see how or in what manner the language of the policy or its endorsement of exclusion could be any clearer. Under the plain language of the policy, except for the exclusion, bodily injury and property damage would be provided for both "completed operations hazard" and "products hazard." It could not be made any clearer that the policy does not provide bodily injury or property damage if either arises out of an occurrence within the definition of "completed operations hazard" or "products hazard." Under both "completed operations hazard" and "products hazard," bodily injury or property damage which occurs away from the premises after the insured has relinquished possession is no longer covered under the policy, and Iowa Kemper is not obligated to make payment on behalf of Steinheider.

While it may very well be true that the alleged negligence occurred on the premises and, in fact, Steinheider may have liability to the customer, it is likewise clear the "property damage" did not occur until after delivery and was off the premises as contemplated by the "completed operations hazard" or the "products hazard."

A case similar in point and one we believe instructive in this case is the case of Tidewater Associated

Oil Co. v. Northwest Casualty Co., 264 F. 2d 879 (9th Cir., 1959). In the Tidewater case, the customer had ordered stove oil, but fuel oil was delivered through the negligence of the insured's employee. The day after delivery, when the customer attempted to light her stove, the fuel oil exploded injuring her. The policy in question had a property damage provision similar to the "completed operations hazard" provision of the instant policy. The plaintiff argued that the insured oil company was liable for its employee's negligence in delivering the oil and that coverage was provided under the policy notwithstanding the referred-to language. The court, however, noted that, while the negligence may have occurred by reason of a misdelivery, the injuries sustained by the customer were caused when she started the fire in the kitchen stove and, therefore, occurred away from the premises owned, rented, or controlled by the insured, after the insured had relinquished possession of such goods or products to others. "* * * In practically every case in which injury or damage is caused by the handling or use of a product, or by a defective condition in such product, the occurrence causing the injury or damage can be traced to some pre-existing negligence. Indeed, were this not so the injured party would have no basis for a tort claim against the insured. Thus, if the allegation of pre-existing negligence were to be regarded as controlling, the result would be to emasculate the product liability exclusion."

Similarly, in the case of Parma Seed, Inc. v. General Insurance Co. of Amer., 94 Idaho 658, 496 P. 2d 281, the Idaho Supreme Court construed a products hazard — completed operations exclusion similar to the one at issue in the instant case. In the Parma case, employees of the seed company ordered a specific weedkiller for a customer and failed to note, when they received the order from their supplier, that it was a more powerful product than the one

specified. They delivered it to their customer whose use of it on several alfalfa fields destroyed the crop. The seed company's general liability policy included an exclusion almost identical to the one involved in the case at bar. In rejecting the argument that there was coverage, the Idaho Supreme Court said: "We read this exclusionary clause to exclude coverage if the liability for which respondent is seeking indemnification arose out of products manufactured, sold, handled, or distributed by respondent, if the accident giving rise to the liability occurred after possession of the goods has been relinquished to others, and if the accident occurred away from respondent's premises. Indeed, it would be difficult to phrase the exclusion any more succinctly than it is phrased in the policy exclusionary clause. We think it is clear that when liability results from the functioning or malfunctioning of a product sold by respondent, and the event establishing liability (i.e., the accident) occurs after relinquishment of possession of the product by respondent, and occurs away from respondent's premises, coverage is excluded." To the same or similar effect, see, Hultquist v. Novak, 202 Minn. 352, 278 N. W. 524; Hagen Supply Corp. v. Iowa National Mutual Insurance Co., 331 F. 2d 199 (8th Cir., 1964).

As noted by the Idaho Supreme Court in the Parma case, we cannot imagine a situation which would be more closely within the coverage of either the "completed operations hazard" or the "products hazard" than the events which occurred in the instant case. Except for the specific exclusionary endorsement, coverage would clearly have been provided. Until the chemical was turned over to the customer and applied by him to the cows, no property damage had yet occurred. While the employees placing the wrong chemical on the truck for delivery may have been negligent, until it was applied to the cows and caused property damage, Stein-

heider was not obligated to pay anything to the customer. If the truck had turned over before it got to the customer and before the cows had been injured, no cause of action would exist. The damage clearly occurred off the premises after the insured had relinquished possession. There could be no coverage.

Having therefore disposed of the principal issue, we turn for a moment to Steinheider's claim that the trial court in some manner abused its discretion in permitting Iowa Kemper to amend its answer. Section 25-852, R. R. S. 1943, provides as follows: "The court may, either before *or after judgment*, in furtherance of justice, and on such terms as may be proper, amend any pleading * * * by inserting other allegations material to the case, or, when the amendment does not change substantially the claim or defense, by conforming the pleading or proceeding to the facts proved." (Emphasis supplied.)

We have many times said that in the furtherance of justice the trial court may exercise its discretion in granting an amendment to the pleading at any stage of the proceedings. We have authorized such amendments after evidence is closed. See Swan v. Bowker, 135 Neb. 405, 281 N. W. 891. We have even permitted such amendment for the first time in this court on appeal. See Lippire v. Eckel, 178 Neb. 643, 134 N. W. 2d 802.

In the instant case, Steinheider knew the position of Iowa Kemper from an early time in the dispute. The record indicates that more than 2 years before trial Steinheider was advised as to the basis for Iowa Kemper's denial of coverage. The record further reflects that Steinheider even attached Iowa Kemper's letter of August 7, 1975, to its petition. That letter of August 7, 1975, contained specific reference to the exclusion and the specific endorsement. Certainly, appellant is not in a position to claim suprise or argue that justice in some manner is affected by permitting the amendment. To the

contrary, under the facts in this case it would appear the failure of the trial court to permit such an amendment would have been a denial of justice. For the reasons contained herein, the judgment of the trial court is in all respects affirmed.

AFFIRMED.