Sarah VIGER, et al.

v.

**COMMERCIAL INSURANCE COMPANY OF NEWARK, NEW JERSEY, Appellant.**

No. 82–3128.

United States Court of Appeals, Third Circuit.

Argued on April 25, 1983.

Decided May 19, 1983.

---

Richard A. Kraemer, Philadelphia, Pa., Mark L. Milligan (argued), Christiansted, St. Croix, V.I., for appellant.

Jeffrey L. Resnick (argued), Derek Hodge, Christiansted, St. Croix, V.I., for appellees.

Before GIBBONS, SLOVITER and BECKER, Circuit Judges.

**OPINION OF THE COURT**

SLOVITER, Circuit Judge.

## I.

### FACTS

This case originated when plaintiffs filed four separate actions, thereafter consolidated, against St. Croix Fisherman's Cooperative, Inc. d/b/a The Fish Shop, a Virgin Islands corporation engaged in the retail sale of fish and fish products, seeking damages for injuries plaintiffs sustained after consumption of fish purchased at The Fish

Shop. The fish was apparently contaminated with ciguatera poisoning. The complaints sought compensatory and punitive damages, alleging, *inter alia,* breach of warranty, negligence, and failure to warn. After a consent judgment was entered against St. Croix Fisherman's in the consolidated cases for an aggregate amount of $97,500, St. Croix Fisherman's assigned to plaintiffs its rights under an insurance contract with Commercial Insurance Company of Newark, New Jersey.

Plaintiffs then filed this suit against Commercial seeking the $97,500 awarded them in the consent judgment, court costs, and attorneys' fees. In its answer, Commercial disclaimed liability on the grounds, *inter alia,* that St. Croix Fisherman's had failed to give it proper notice of plaintiffs' claim and that the insurance policy did not provide coverage for the acts complained of. Plaintiffs moved for summary judgment, contending that Commercial was collaterally estopped by the consent decree from contesting St. Croix Fisherman's negligence and that coverage could be determined from the language of the policy. After a hearing, at which the only witness was Commercial's expert, Prof. C. Arthur Jaffe, the trial court granted plaintiffs' motion for summary judgment. Commercial appeals. We reverse on the ground that the injuries at issue were unambiguously excluded from coverage under the policy.

## II.

## DISCUSSION

### A.

### *Notice*

The central question is whether the insurance policy at issue covered the injuries in this case. As a preliminary matter, however, Commercial contends it was given inadequate notice of the claim by St. Croix Fisherman's. The trial court found that "[t]he insurance company was given notice of the complaints filed against the insured" and that there was "no question as to the timeliness or adequacy of this notice." Commercial argues that there was a disputed factual issue as to notice, precluding the grant of summary judgment.

In its answer to the complaint Commercial denied that notice had been given. However, Commercial failed to submit affidavits to contradict the affidavit of St. Croix Fisherman's general manager stating that notice had been given. Naked assertions in the pleadings are insufficient to withstand summary judgment. *See* Fed. R.Civ.P. 56(e); *Ness v. Marshall,* 660 F.2d 517, 519 (3d Cir.1981). The mere correspondence between Commercial and plaintiffs' counsel denying notice does not meet the showing required to create a genuine issue of material fact under Rule 56. Accordingly, Commercial's notice argument was properly rejected.[1]

### B.

### *Coverage*

We turn to the question of coverage. The policy form listed twenty-six possible coverage parts, with a blank square next to each to be marked to designate the coverage. In this policy, only the square for Owners', Landlords' and Tenants' Liability Insurance was marked. Significantly, one of the other possible coverages was for Completed Operations and Products Liability Insurance, but that coverage was not purchased.

The policy provided that

The company will pay on behalf of the insured all sums which the insured shall

---

1. Furthermore, at the hearing before the district court plaintiffs' attorney stated: "We have stipulated the sole question before the court is does the policy apply to the particular facts of the case. In other words, does the policy cover for the injury that was within the complaint." Commercial's attorney did not dispute this characterization of the stipulation.

become legally obligated to pay as damages because of

   A.  bodily injury or

   B.  property damage

to which this insurance applies, caused by an occurrence and arising out of the ownership, maintenance or use of the insured premises and all operations necessary or incidental thereto.

The annual premium for this policy was $40.00 and, as set forth in the policy, was based on the size of the premises, 600 square feet.

Commercial contends that the plaintiffs' claims are not covered by this policy because they were explicitly excluded under the language of exclusion "p", which provided that

This insurance does not apply:

. . . .

(p) to bodily injury or property damage included within the completed operations hazard or the products hazard.

The terms "completed operations hazard" and "products hazard" were defined in the definitions section on the jacket of the policy as follows:

"completed operations hazard" includes bodily injury and property damage arising out of operations or reliance upon a representation or warranty made at any time with respect thereto, but only if the bodily injury or property damage occurs after such operations have been completed or abandoned and occurs away from premises owned by or rented to the named insured . . . .

"products hazard" includes bodily injury and property damage arising out of the named insured's products or reliance upon a representation or warranty made at any time with respect thereto, but only if the bodily injury or property damage occurs away from premises owned by or rented to the named insured and after physical possession of such products has been relinquished to others.

We need not consider the scope of the "completed operations hazard" exclusion, because we hold that the injuries in this case fall within the "products hazard" exclusion of the policy. The "bodily injur[ies]" sued for "[arose] out of [St. Croix Fisherman's] products", and those "bodily injur[ies] . . . occur[red] away from premises owned by or rented to [St. Croix Fisherman's] and after physical possession [was] relinquished to others."

The trial court came to its conclusion that coverage was not excluded because it believed that exclusion "p" did not encompass a negligent failure to warn of the sort alleged by plaintiffs, and, alternatively, that the policy was at the least ambiguous, and ambiguities should be strictly construed against the insurance company.

In considering the failure to warn claim, the trial court failed to distinguish between plaintiffs' allegation of failure to warn as a basis for alleging liability against St. Croix Fisherman's and the separate question whether such liability is covered by the insurance policy. Thus, the trial court focused on St. Croix Fisherman's duty to warn plaintiffs and its alleged breach of that duty on the insured premises. Even if we assume *arguendo* that the breach of such a duty by St. Croix Fisherman's occurred on the insured premises, it does not advance analysis of the contractual obligation undertaken by Commercial. Under the language of the "products hazard" exclusion, the relevant inquiry is whether the bodily injury, not the tortious conduct, occurred on the insured premises. In this case, there is no dispute that plaintiffs left the premises after purchasing the fish, and that the preparation and consumption of the fish and plaintiffs' subsequent illness took place away from The Fish Shop. Therefore, plaintiffs' claim in this case arises out of an alleged "products hazard", as defined by the policy. *See Fred Steinheider & Sons, Inc. v. Iowa Kemper Insurance Co.*, 204 Neb. 156, 281 N.W.2d 539 (1979). *But cf. Fidelity & Casualty Co. v. Fratarcangelo*, 201 Va. 672, 112 S.E.2d 892 (1960).

The Wisconsin Supreme Court in *Jones v. Sears Roebuck & Co.*, 80 Wis.2d 321, 259 N.W.2d 70 (Wis.1977), faced with an insurance policy containing exclusions virtually identical to those here and a complaint containing a failure to warn claim, held, without any separate discussion of the failure to warn allegation, that because the injury occurred off the premises of the seller and after the seller had relinquished control of the product to the purchaser, coverage was clearly excluded by the terms of the policy.

Plaintiffs rely on *ADA Resources, Inc. v. Don Chamblin & Associates, Inc.*, 361 So.2d 1339 (La.App.1978). Suit had been filed against the insured, a seller of equipment used in oil drilling, alleging negligence in delivering a cross-over joint other than the one ordered and in failing to discover such mistake, and also alleging that the product delivered was defective. The insurance company disclaimed its obligation to defend on the basis of the "products hazards" and "completed operations" exclusions, and the trial court entered summary judgment for the company. On appeal, the court held that these exclusions could not relieve the insurance company from defending the claim based on the insured's negligent omission which was not related to any product defect. The court viewed this claim of negligence as "in the nature of a general risk of doing business which comprehensive general liability policies seek to cover." *Id.* at 1344. On the other hand, the court affirmed the grant of summary judgment for the insurance company as to plaintiffs' second claim, which alleged delivery of a defective product, holding that this claim fell within the "products hazard" exclusion. To the extent that the *ADA* case has any applicability here, it is the latter claim which is analogous, since the claim against St. Croix Fisherman's also is grounded, in essence, on a defect in the products sold.

■ When the alleged failure to warn is unrelated to sale of a defective product, the "products hazard" and "completed operations" exclusions are inapplicable. For example, in *Gehrlein Tire Co. v. American Employers Insurance Co.*, 243 F.Supp. 577 (W.D.Pa.1964), aff'd, 348 F.2d 918 (3d Cir. 1965) (per curiam), suit was brought against an insured who had not sold a product but who had only performed a service (mounting tires on rims) on a product brought in by the customer. The subsequent injury was caused by a pre-existing condition which it was alleged the insured should have detected and brought to the customer's attention. In finding the claim was covered by the policy, the court stressed that the "accident occurred because of failure to warn only" and that "[n]o defect was present with regard to any products dealt in by Gehrlein or in the 'operations' on any of Gehrlein's products." 243 F.Supp. at 581.

■ Unlike *Gehrlein,* in this case there is no dispute that the injury was caused by a defective product sold by the insured and that the alleged failure to warn related to the product defect. Therefore, the "products hazard" exclusion applies. It cannot be rendered meaningless by framing the claim in terms of a failure to warn. A failure to warn claim will fall outside of a "products hazard" exclusion only if it is based on something other than a defect in the product sold by the insured.

Finally, we turn to the district court's conclusion that the policy was ambiguous, and should therefore be construed against the insurance company. *See, e.g., St. Paul Fire & Marine Insurance Co. v. United States Fire Insurance Co.*, 655 F.2d 521, 524 (3d Cir.1981) (applying Pennsylvania law). We have recently cautioned that courts should not see ambiguities where none exist: "A court should read policy provisions to avoid ambiguities, if possible, and not torture the language to create them." *Northbrook Insurance Co. v. Kuljian Corp.*, 690 F.2d 368, 372 (3d Cir.1982) (quoting *St. Paul Fire & Marine Insurance Co. v. United States Fire Insurance Co.*, 655 F.2d at 524).

In *Fred Steinheider & Sons, Inc. v. Iowa Kemper Insurance Co.*, 204 Neb. at 161, 281

N.W.2d at 542, the court rejected the claim that policy exclusions similar to those here were ambiguous, stating, "We are unable to see how or in what manner the language of the policy or its endorsement of exclusion could be any clearer." We do not find support for plaintiffs' claim of ambiguity in *Ocean Accident & Guarantee Corp. v. Aconomy Erectors, Inc.,* 224 F.2d 242 (7th Cir. 1955), cited by plaintiffs. After holding that summary judgment had been improvidently granted because there was a genuine issue of material fact on another issue, the court indicated that the "products hazard" exclusion might not exclude coverage of a claim for death of a construction worker who fell through a roof under construction, allegedly as a result of faulty workmanship by the insured sub-contractor. Without deciding the issue, the court noted that it could be argued that no "product" was involved and that the accident occurred on what might be considered the sub-contractor's premises for the purpose of the work in question, either of which would render the "products hazard" exclusion inapplicable. In dictum, the court described the policy as ambiguous, commenting on its numerous pages and six attached supplements "inconveniently assorted into different sizes." *Id.* at 247. Ambiguity *vel non* of a policy is an issue for the court. *Northbrook Insurance Co. v. Kuljian Corp.,* 690 F.2d at 371 (construing Pennsylvania law). We have examined this policy and do not find the "bewildering array of exclusions, definitions and conditions" which apparently characterized the policy which was before the *Ocean Accident* court. 224 F.2d at 247.

Plaintiffs suggest it is ambiguous to limit "products hazard" to injuries occurring "after physical possession of such products has been relinquished to others" since the "others" are unidentified, and an insured could therefore "reasonably read such section to mean relinquishment by its customer to a third party, and conclude that it was covered for its own direct sales, but not upon some resale or other re-conveyance by its

vendee." Appellees' Brief at 13. We see no reason to construe clear language in this farfetched manner.

Plaintiffs also suggest that the fact that one must refer to several different places in the policy (including the jacket) to find the applicable exclusions and definitions somehow renders the policy generally ambiguous. Unless insurance policies are to be drafted individually to cover each contract, which would increase the premiums considerably, the necessity to integrate provisions from different parts of the policy seems inevitable. In any event, a policy which is otherwise clear is not rendered ambiguous simply because it requires the insured to read it thoroughly and carefully. We find the other contentions of ambiguity similarly unpersuasive.

We find that the policy unambiguously excludes from coverage the plaintiffs' injuries. Plaintiffs, in their motion for summary judgment, have conceded that there are no genuine issues of material fact. Therefore, although Commercial did not file a cross-motion for summary judgment, which would have been the better practice, we will reverse the judgment for the plaintiffs and direct the district court to enter summary judgment for defendant. *See* 6 Moore's Federal Practice ¶ 56.12 (2d ed. 1982); *Missouri Pacific Railroad Co. v. National Milling Co.,* 409 F.2d 882, 885 (3d Cir.1969) (per curiam); *Service Personnel & Employees Local 205 v. Carl Colteryahn Dairy, Inc.,* 436 F.Supp. 341, 345 (W.D.Pa.1977).